## BARBER *v.* BARBER.

1. DIVORCE—EXTREME CRUELTY—EVIDENCE.

Evidence sustained decree of divorce for plaintiff wife on ground of extreme cruelty, notwithstanding she was not wholly without fault.

2. SAME—CONDONATION.

The term "condonation," as used in a suit for divorce, denotes forgiveness, reconciliation and reunion and restoration of all marital rights.

3. SAME—CONDONATION—EVIDENCE.

Evidence that plaintiff did not occupy the same bed with defendant for 3 months prior to the filing of her bill for divorce was sufficient to show she had not condoned extreme cruelty of the past.

4. SAME—JURISDICTION—SERVICE OF PROCESS.

A chancery court acquires jurisdiction of the subject matter and the parties upon the filing of bill for divorce and return that summons was served upon defendant.

5. EQUITY—JURISDICTION—SUBSEQUENT EVENTS.

Equitable jurisdiction must be determined by the conditions existing at the time the bill of complaint is filed and not by the conditions which come into existence after the commencement of the suit, and having once attached, the jurisdiction cannot be defeated by subsequent events which do not affect the merits of the plaintiff's case.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur, Divorce and Separation, § 48 *et seq.*
[2, 3] 17 Am Jur, Divorce and Separation, §§ 196, 204 *et seq.*
[2, 3] Condonation of cruel treatment as defense in divorce action. 14 ALR 931; 98 ALR 1354.
[3] 17 Am Jur, Divorce and Separation, § 412.
[6–9] 50 Am Jur, Statutes, §§ 475–483.
[10] 17 Am Jur, Divorce and Separation, § 252.
[10] What constitutes residence or domicil within State for purpose of jurisdiction in divorce. 106 ALR 6; 159 ALR 496.

6. STATUTES—RETROSPECTIVE LAWS.

A retrospective law, in the legal sense, is one which takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past.

7. SAME—PROSPECTIVE OPERATION.

A new law ought to be prospective, not retrospective, in its operation.

8. SAME—PROSPECTIVE OPERATION—INTENT—PRESUMPTIONS.

The question of whether a statute operates retrospectively, or prospectively only, is one of legislative intent and in determining such intent, a strict rule of construction against a retrospective operation is applied and indulgence had in presumption that legislature intended statutes and amendments thereof to operate prospectively only, and not retrospectively.

9. SAME—CONSTRUCTION AS PROSPECTIVE IN OPERATION.

A statute is to be construed as having a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively.

10. DIVORCE—JURISDICTION—RESIDENCE—CONSTRUCTION OF STATUTES.

In the absence of any provision to the contrary, amendatory statute requiring a party to suit for divorce to have resided in county in which bill is filed for 10 days immediately preceding the filing, which statute became effective after plaintiff had filed her bill for divorce, is construed as prospective so as not to apply in suit in which the court had acquired jurisdiction of the subject matter and the parties, neither of whom had resided for such period in the county where suit was started (CL 1948, § 552.9).

11. SAME—COSTS—ATTORNEY FEE ON APPEAL—COURT RULES.

Attorney fee of $100 is allowed wife on affirmance of decree of divorce on appeal, in lieu of fee provided by rule, and in addition to other costs (Court Rule No 5 [1945]).

Appeal from Branch; Jacobs (Theo T.), J. Submitted January 19, 1950. (Docket No. 14, Calendar No. 44,632.) Decided February 28, 1950.

Bill by Mary Ellen Barber against William F. Barber on ground of extreme cruelty. Decree for plaintiff. Defendant appeals. Affirmed with additional attorney fee.

*Harold F. Bristol,* for plaintiff.

*Pierce, Planck & Ramsey,* for defendant.

SHARPE, J. Defendant, William F. Barber, appeals from a decree of divorce granted plaintiff, Mary Ellen Barber. The parties to this divorce suit were married in September of 1939 and from the time of their marriage until February 3, 1947, they resided in Williamston township, Ingham county. On that date, plaintiff, Mary Ellen Barber, and their 2 children aged 5 and 2 years went to her parents' home in Branch county. On February 6, 1947, she filed her bill of complaint in Branch county. The cause came on for trial nearly a year later at which time plaintiff was granted a decree of divorce, custody of children and a property settlement. The decree also provided:

"It is further ordered, adjudged and decreed, that the said William F. Barber shall pay to the clerk of this court on March 1, 1948, and each and every week thereafter the sum of $25 for the support and maintenance of the said Richard W. Barber and Patricia Ann Barber, the minor children of the parties, until they shall attain the age of 17 years, or until the further order of this court; and said clerk is hereby directed to transmit all sums of money so paid to the plaintiff Mary Ellen Barber."

Defendant appeals and urges that a decree of divorce should not have been granted plaintiff as she was guilty of the same kind of acts towards defendant about which she complains about defendant. The trial court filed an opinion in which he observed:

"The court would dismiss this bill of complaint, but there is undisputed evidence here that he called plaintiff a bitch, a slut and a whore, and other bad names.

"She is a very sensitive woman, a school teacher. He has a responsible position in Lansing. She has a responsible position in the schools of the State, I believe in Battle Creek, and she has been on the stand a very sensitive person. Any man who would call the mother of his children a whore, a bitch and slut, is something that this court, and any other court cannot tolerate. If those things were out of the case I am inclined to believe the bill should be dismissed, but with those things in the case undisputed, and then defendant has been on the stand as well as the plaintiff. The court had an opportunity to observe the defendant and his actions on the stand, the way he answered the questions and his actions confirm all of the statements claimed by plaintiff on the stand.

"I can easily see why he was very disagreeable, did not co-operate to make the marriage a success."

The trial court also found as a fact that plaintiff was not wholly without fault. Upon one occasion she slapped defendant's face and upon another occasion called him a S. O. B. The record shows that the testimony offered by the parties was to some extent contradicting. Plaintiff testified:

"During that time the defendant has struck me, or made assault upon me. The first time was about the spring of 1946, when we were having one of our frequent quarrels (witness cries somewhat). I finally wanted to have it out with him and wanted to call his family and have them come out. We were having a quarrel at that time. I went to the phone to call the number. He pushed me away from the phone and knocked me down. (Witness cries again.)
* * *

"Well, I distinctly remember several times of his telling me that I was nothing but a whore like one of my clan, and he always jumped to conclusions to other people, never tried to know them, he always had his ideas of what kind of people they were, then, that was why—this one was a whore, and that one a bitch.   One morning he came storming into the bedroom, threatened to kill the children and called me a lazy bitch.

"Many times he has called me everything in the presence of the children.   It did not make any difference whether they were there or not.

"Our trouble became so bad during the last year I lived with him, his temper tantrums became so frequent, I would rather shut up and put up with anything than even attempt to talk anything over with him.   At first he would talk things over, but then he got so that he would throw mental fiestas, sometimes they lasted 3 or 4 hours; one day it lasted all day long, where he would cry like a third grader in front of the children, all with the idea that we were doing something that should never happen to him.   He was always the abused one.   And then he would get so terrible mad that I became afraid of what he would do to me and to the children, I would not even have attempted to stay there and live alone for fear of what he would have done to me."

We are not unmindful of the fact that trial courts have an advantage of seeing and hearing the witnesses.   The testimony given by plaintiff, if believed by the trial court would justify a decree of divorce.

We are not in accord with defendant's claim that there was condonation of past offenses.   The claim is based upon the fact that when plaintiff left home to visit her parents she did not speak to defendant about their separating and the fact that at one time the parties contemplated the purchase of "Shagbark."

Condonation denotes forgiveness, reconciliation and reunion and restoration of all marital rights; see *Farley* v. *Farley,* 278 Mich 361 (109 ALR 678). In the case at bar plaintiff did not occupy the same bed with defendant for 3 months prior to the filing of her bill for divorce. Such action on her part is contrary to the thought of condonation.

It is also urged that PA 1947, No 323,* which became effective October 11, 1947, divested the chancery court of Branch county of jurisdiction to grant a decree of divorce. The act in question provides in part:

"No decree of divorce shall be granted by any court in this State unless the complainant or defendant, or both of them, shall have resided in the county in which the bill or petition for divorce is filed for 10 days immediately preceding the filing of the bill or petition therefor."

In the case at bar the bill of complaint was filed and the cause at issue prior to the effective date of the mentioned act. When the bill was filed and summons returned served upon the defendant, the chancery court acquired jurisdiction of the subject matter and the parties. We also note that this question was raised for the first time upon appeal.

In 19 Am Jur, p 48, we find:

"Equitable jurisdiction must be determined by the conditions existing at the time the bill is filed, and not by the conditions which come into existence after the commencement of the suit. Having once attached, the jurisdiction cannot be defeated by subsequent events which do not affect the merits of the complainant's case. Accordingly, it is held that the court does not lose jurisdiction of a suit for infringement of a patent by the expiration of the patent pending final decree.

---

* CL 1948, § 552.9 (Stat Ann 1949 Cum Supp § 25.89).—RE-PORTER.

"The fact that a legal remedy has become available is held not to cause a loss of jurisdiction. Having once had original jurisdiction of the case, the equity court may properly dispose thereof although the legislature has conferred upon the common-law courts power to act in the premises."

In 50 Am Jur, at page 492, it is said:

"A retrospective law, in the legal sense, is one which takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability, in respect of transactions or considerations already past."

And at page 493:

"Because every law that takes away or impairs vested rights under existing laws, is generally reprehensible, unjust, oppressive, and dangerous, such retroactive laws have not been looked upon with favor, but with disfavor. * * * It is a maxim, which is said to be as ancient as the law itself, that a new law ought to be prospective, not retrospective, in its operation (*nova constitutio futuris formam imponere debet, non praeteritis*)."

And at page 494:

"The question whether a statute operates retrospectively, or prospectively only, is one of legislative intent. In determining such intent, the courts have evolved a strict rule of construction against a retrospective operation, and indulge in the presumption that the legislature intended statutes, or amendments thereof, enacted by it to operate prospectively only, and not retroactively."

In *Angell* v. *West Bay City,* 117 Mich 685, we had occasion to construe a charter amendment. In that case the city amended its charter to require notice of an accident, resulting from defective streets or sidewalks, be given within 60 days thereafter. We

there held that the amendment did not apply to claims occurring prior to the time the amendment took effect and said:

"The general rule is that a statute is to be construed as having a prospective operation only, unless its terms show clearly a legislative intention that its terms should operate retrospectively. *Ludwig* v. *Stewart,* 32 Mich 27; *Harrison* v. *Metz,* 17 Mich 377; *McKisson* v. *Davenport,* 83 Mich 211 (10 LRA 507); *Atherton* v. *Village of Bancroft,* 114 Mich 241; Cooley, Constitutional Limitations (6th ed), 455."

In our opinion the act in question is prospective in operation and has no application to causes in which the court has acquired jurisdiction of the subject matter and the parties. The trial court reached an equitable result and the decree is affirmed. Plaintiff may recover costs as well as the sum of $100 to plaintiff's counsel as attorney fees on appeal in lieu of the fee provided by rule.*

Boyles, C. J., and Reid, North, Dethmers, Butzel, Carr, and Bushnell, JJ., concurred.

---

* See Court Rule No 5 (1945).—Reporter.