356 P.2d 61

**Cecil R. POOLE, Cecil Green and Calvin Green, Plaintiffs-Appellants,**

v.

**LaMar OLAVESON and the Menan Second Corporation of the Church of Jesus Christ of Latter-Day Saints, a corporation sole, Defendants-Respondents.**

No. 8894.

Supreme Court of Idaho.

Oct. 14, 1960.

Lee & Bates, Rigby, for appellants.

Albaugh, Bloem & Smith, Idaho Falls, for respondents.

SMITH, Justice.

Appellants (plaintiffs) seek to enjoin respondents (defendants) from diverting

their waste water arising from the irrigation of their lands into drainage ditch or system constructed by appellants, who contend it to be their own private property; whereas respondents contend that the drainage system substitutes for the natural channel of Spring Creek, which furnished natural drainage for such waste waters.

The Sections of land hereinafter referred to are situate in Township 5 North, Range 38 East of the Boise Meridian, in Jefferson County.

Spring Creek arises in the Little Buttes area in Jefferson County, from whence it flows westerly some seven miles, emptying into Snake River.

The segment of Spring Creek involved in this action, as it originally existed from "time immemorial" until during the years 1952 to 1958, inclusive, arose near the SE corner of the NE ¼ of NE ¼ of Section 33, near the NE corner of the Townsite of Menan, in the area of the Gunderson Springs. The Creek, flowing westerly, was crooked and meandering, with large loops or curves in its channel. From the Gunderson Springs area the Creek flowed northwesterly into the S ½ of SE ¼, of SE ¼, of Section 28, where it made a large loop; then it meandered southerly and westerly, again in large loops, through the N ½ of Section 33, flowing into Section 29 near its SE corner. It then meandered nearly

to the center of the SE ¼ of Section 29, and then back across the south line of said quarter section, southerly about three-eighths of a mile; then it flowed northerly into the SW ¼ of SW ¼ of Section 29, and then looped back southerly, across the west line of Section 29 near its SW corner.

Spring Creek flows some 1,500 to 2,000 miners inches of water during the irrigation season and from 150 to 500 inches during the late winter and early spring. The flow varies at different seasons of the year but, at comparable times, it remains about the same from year to year.

The water course of Spring Creek, with the passage of time, became somewhat changed. Springs dried up in the Creek east of the segment involved in this action, permitting land owners in that area to fill in and level portions of the old channel. Also, silt and eroded material, deposited in the channel of the segment involved herein, tended to raise the bed of the channel and cause overflow from its banks onto the lands belonging to plaintiffs. The overflow was further aggravated by use of the Clifford Headgate, located in the channel of Spring Creek on plaintiffs' lands, by water users, owners of decreed rights to the flow of Spring Creek, to divert the waters of the Creek. Such also raised the water table in plaintiffs' lands impeding their farming operations.

Appellants Cecil and Calvin Green, herein sometimes referred to as Green Brothers, in 1951 owned most of the SE 1/4 of Section 29, and appellant Poole owned land situate in the E 1/2 of NE 1/4 of Section 32.

The Green Brothers prior to and during 1951 formulated a plan to remedy the filled in channel of Spring Creek and its meanderings through their land. The plan, in part, suggested abandonment of the Clifford Headgate, and the delivery to water users of the decreed waters of Spring Creek, or equivalents, through alternative canal systems. Affected water users accomplished this by the time of commencement of the irrigation season of 1953, with new points of diversions authorized by the State Department of Reclamation.

The plan also proposed the financing and construction of a drainage ditch or system. Green Brothers attempted but were unable to organize the land owners in the area into any unified effort in the promotion of a common drainage system for drainage of the affected areas. Green Brothers then commenced construction of the proposed drainage ditch.

Beginning at the channel of Spring Creek near the SE corner of Section 29, Green Brothers constructed the first segment of the drainage ditch, extending from the SE corner of Section 29 along its south line, and ending in the channel of Spring Creek near the middle point of the south line of said Section, thereby eliminating the northward meandering loop of the Creek which circled through their land. The waters of Spring Creek then flowed through the newly constructed drainage ditch. This segment of the drainage system, sometimes called the middle drain, was completed during the year 1952.

Shortly thereafter appellants extended the drainage ditch from the west end of the middle drain, west along the south line of Section 29, to the vicinity of the SW corner of said Section, again connecting up with the original channel of Spring Creek, thereby eliminating the meandering loop which extended south of the section line to the center of Section 32. Various persons, not parties to this action, assisted financially in this construction. Such lower segment of the drainage ditch is sometimes called the lower drain.

During 1955, Green Brothers constructed the upper portion of the drainage system by extending the drainage ditch from the east end of the middle drain, east slightly over a half mile, along the south line of Section 28, again to a point in the original channel of Spring Creek, thereby eliminating two meandering loops of the Creek, mostly situate in the N 1/2 of Section 33. Various persons not parties to this action, as well as the respondents, assisted finan-

cially in this construction. This upper segment of the drainage ditch is sometimes called the upper drain which carried waters from the Gunderson Springs.

Additional interested parties effected the extension of the drainage system along the south line of Section 28, to a terminus just west of the River Road (county road) which extends north and south along the section line common to Sections 27–28 and 33–34.

The lands of respondents (now owned by respondent Church corporation) are situate in the NW ¼ of NW ¼ of Section 34, immediately east of the River Road. During the spring of 1958, respondent Church corporation, owner of the lands, caused a culvert to be installed under the River Road, and some time subsequent to April 29, 1958, caused its waste irrigation water to be drained through the culvert and into the drainage system, including the middle and lower drains constructed by appellants, which appellants assert constitutes their privately owned drainage system; whereas, respondents assert that the entire drainage system substitutes for the original channel of Spring Creek into which drained their waste water.

The record shows that some waste water always results from irrigation of lands in the vicinity of Menan. Prior to installa-tion of the culvert, the waste water from respondents' small farm ran into the borrow pit bordering the River Road where it evaporated or percolated into the ground. Such waste water, according to the record, does not amount to more than 50 to 75 miners inches at any one time, and such flow continues from two to four hours at intervals of seven to ten days apart during the irrigation season; also, that such intermittent flow is not noticeable downstream in the drainage canal, substituted for Spring Creek channel, on plaintiffs' lands.

Immediately after the accomplishment of respondents' drainage by the installation and use of the culvert under the River Road, i. e., shortly after April 29, 1958, appellants caused the culvert to be closed. Respondents' reopening the culvert July 6, 1958, resulted in appellants' institution of this action September 12, 1958. The trial court granted an injunction pendente lite, temporarily restraining respondents from draining their waste irrigation water into such drainage system, which injunction appellants sought to be made permanent.

Trial before the court without a jury resulted in judgment in favor of respondents, adjudging Spring Creek to be a natural stream; that the drainage channel, constructed by appellants, substituted for the original channel of Spring Creek; and that respondents have the right to discharge

their waste irrigation water into such substitute channel of Spring Creek. The trial court thereupon denied injunctive relief to appellants and dissolved the temporary injunction. Appellants have appealed from such judgment.

Appellants' various specifications of error bear upon the question whether the drainage system which they constructed, being essentially the middle and lower drains, substitutes for the natural channel of Spring Creek, which furnished natural drainage for waste water in the area; if it does so substitute, then respondents contend that they may divert their waste irrigation water into the drainage system even though their waste water be considered "foreign waters", so long as respondents' use of the drainage system is reasonable, and noninjurious to appellants.

■ "All the waters of the state, when flowing in their natural channels, including the waters of all natural springs and lakes within the boundaries of the state are declared to be the property of the state, whose duty it shall be to supervise their appropriation and allotment to those diverting the same therefrom for any beneficial purpose, * * *." I.C. § 42–101. This expressed policy of the legislature is in harmony with Idaho Const. art. 15, § 1; Adams v. Twin Falls-Oakley Land & Water Co., 29 Idaho 357, 161 P. 322; Short

v. Praisewater, 35 Idaho 691, 208 P. 844, Such interest or title is not "in the proprietary sense, but rather in the sovereign capacity as representative of all the people for the purpose of guaranteeing that the common rights of all shall be equally protected and that no one shall be denied his proper use and benefit of this common necessity." Walbridge v. Robinson, 22 Idaho 236, 125 P. 812, 814, 43 L.R.A.,N.S., 240.

■ The policy of the law of this State is to secure the maximum use and benefit, and least wasteful use, of its water resources. Stickney v. Hanrahan, 7 Idaho 424, 63 P. 189; Van Camp v. Emery, 13 Idaho 202, 89 P. 752; Farmers' Co-operative Ditch Co. v. Riverside Irr. Dist., 16 Idaho 525, 102 P. 481; Coulson v. Aberdeen-Springfield Canal Co., 39 Idaho 320, 227 P. 29; Reynolds Irrigation Dist. v. Sproat, 69 Idaho 315, 206 P.2d 774; Ramseyer v. Jamerson, 78 Idaho 504, 305 P.2d 1088; Mountain Home Irrigation District v. Duffy, 79 Idaho 435, 319 P.2d 965; I.C. §§ 42–101 and 42–104. The legislature, in order to effectuate this policy, has made it a misdemeanor to waste any of the waters of any stream used for irrigation, "by allowing such water to waste by running into depressions or dry channels so that the same can not be used for irrigation, nor reach the original channel of the stream from which it has been diverted." I.C. §

18-4302; Mountain Home Irrigation District v. Duffy, supra.

█ A stream does not lose the attributes of a water course merely because a part of its channel may have been artificially created. 1 Kinney on Irrigation and Water Rights, p. 489; Hornor v. City of Baxter Springs, 116 Kan. 288, 226 P. 779; Rigney v. Tacoma Light & Water Co., 9 Wash. 576, 38 P. 147, 26 L.R.A. 425; Scranton-Pascagoula Realty Co. v. City of Pascagoula, 157 Miss. 498, 128 So. 73; Chowchilla Farms v. Martin, 219 Cal. 1, 25 P.2d 435.

██ I.C. § 42–101 provides that "the right to the use of any of the waters of the state for useful or beneficial purposes is recognized and confirmed." Substitution of the artificial drainage channel for the natural channel of Spring Creek did not affect the rights of users of the waters of the Creek to the use of its water course to drain away waste waters arising from use of waters of the Creek. Nor can appellants be heard to complain in the premises they allege unless they sustain material damage. They have failed to show any damage sustained on account of the waste waters which respondents seek to drain into the drainage system.

Appellants do not complain of the use of the drainage channel as a means of draining waste waters from the lands of those persons who are riparian to Spring Creek; in fact, appellants suggested and commended the move which extended the drainage ditch from the SE corner of Section 28 and the River Road, west along the south line of said section, to connect with the upper drain. It was at the instance and invitation of the parties who financed and constructed such upper portion of the drain that respondents connected therewith after acquisition of a right of way and installation of a culvert under the River Road.

█ Appellants contend, however, that respondents' waste water is foreign to the channel of Spring Creek, since it evaporated or percolated into the ground, after accumulating in the borrow pit east of the River Road, and that respondents have no right to drain such foreign waters into the drainage ditch, though it substitutes for the natural channel of Spring Creek, which substituted channel includes the middle and lower drains constructed by appellants.

The record shows that Gunderson Springs arise in the area of respondents' land and that those Springs are tributary to the Spring Creek water course; therefore, waste water in that area, if such there be, constitutes a by-product of the irrigation waters likewise arising in that area; and the reclaiming of so-called foreign waters, whether waste or otherwise, by

drainage into the natural channel of a stream, if without detriment or damage to others, is in keeping with the expressed policy of this State to secure the maximum beneficial and least wasteful use of its water resources.

The foregoing view finds support in Fell v. M. & T., Inc., 73 Cal.App.2d 692, 166 P.2d 642, 643, wherein it is stated:

" * * * The mandates of this section [Cal.Const. Art. XIV, § 3, requiring that water resources of the state be put to beneficial use to the fullest extent possible] 'apply to the use of all water, under whatever right the use may be enjoyed.' Peabody v. City of Vallejo, 2 Cal.2d 351, 367, 40 P.2d 486, 491. Since foreign waters may be produced for beneficial use (Stevens v. Oakdale Irr. Dist., 13 Cal.2d 343, 352, 90 P.2d 58), and a natural channel may be used as a conduit or drain for the flow of such waters (City of. Los Angeles v. City of Glendale, 23 Cal.2d 68, 76, 77, 142 P.2d 289; Stevens v. Oakdale Irr. Dist., supra), and since the use of such foreign waters, as long as it does not interfere with the rights of another, is of no concern to such other (Bloss v. Rahilly, 16 Cal.2d 70, at pages 78, 79, 104 P.2d 1049), it follows that a noninjurious and reasonable use by defendants of the waters imported upon their lands and allowed to drain into Little Chico Creek is within the protection of the Constitution and may not be enjoined."

See also Cheesman v. Odermott, 113 Cal. App.2d 26, 247 P.2d 594; Phillips v. Burke, 133 Cal.App.2d 700, 284 P.2d 809.

Appellants further complain that respondents' use of the middle and lower drain for drainage and transmission of their waste water may ripen into an easement. Appellants then pose the query: why the legislature by enactment of I.C. § 42–1107 prescribed that "proceedings may be had in the same manner as in cases of eminent domain" by which persons may reach a natural water way for the purpose of carrying off surplus water?

■ Appellants' position in the premises is answered by the reasoning of Fell v. M. & T., Inc., supra, as follows:

"Although it is true that the privilege of turning imported water into the channel of a stream might ripen into an easement (Crane v. Stevinson, 5 Cal.2d 387, 395, 54 P.2d 1100), still under general principles this could happen only *if there should be an interference with the rights of another.* See, City of San Diego v. Cuyamaca Water Co., 209 Cal. 105, 132–135, 287 P. 475." (Emphasis supplied.)

See also Phillips v. Burke, supra, to the same extent, and further, to the effect that respondents' right to discharge waste water into the natural water course across appellants' lands must be limited to a use which would be reasonable and noninjurious.

Such reasoning, which we adopt as applicable herein, particularly in the absence of any showing of damage to appellants on account of the complained of act of respondents, obviates the necessity of any proceeding at this time by respondents as contemplated by I.C. § 42–1107. Noteworthy, the trial court found that appellants had made no showing of injury, recognizing the theory that any privilege granted respondents of turning their waste water into the newly constructed drainage ditch could ripen into an easement only if there should be an interference with the rights of another for the prescriptive period of time. It was upon that theory, supported by the findings, that the trial court adjudged respondents to be entitled to discharge their waste irrigation water into the drainage channel constructed by appellants in substitution for the original channel of Spring Creek.

The judgment of the trial court is affirmed. Costs to respondents.

TAYLOR, C. J., and KNUDSON, McQUADE and McFADDEN, JJ., concur.