448 P.2d 977

Arnold C. ENGEN, Sr., Plaintiff-Respondent,

v.

Elmer E. JAMES, Chairman, Robert Nuttleman, Robert Thom, Delbert Breithaupt, Ivan Hanson, Elton Gittel, A. V. Hippler, Howard Hudson, John McHugh, Ernest Hurrell, Reine Schmidt, and Mayor Lawrence Gardner, ex-officio Chairman, all constituting the Board of Police Retirement Fund Commissioners, Defendants-Appellants.

No. 10222.

Supreme Court of Idaho.

Jan. 6, 1969.

E. T. Knudson, Coeur d'Alene, for appellants.

Charles H. Kimball, Coeur d'Alene, for appellee.

SMITH, Chief Justice.

The facts are stipulated. In 1952 the city of Coeur d'Alene established a "Policeman's Retirement Fund" in accordance with the provisions of Idaho Code, Title 50, chap. 15. Appellants constitute the board of police retirement fund commissioners of Coeur d'Alene, hereinafter sometimes designated as the board.

July 18, 1941, respondent was appointed a policeman by the city of Coeur d'Alene. He remained on the payroll of the police department until July 15, 1960. At that time he held the rank of chief of police. July 15, 1960, pursuant to his petition, the board granted him retirement benefits on account of illness attributable in large part to his services as a policeman.

Respondent has, as a result of this disability retirement, continued to receive $2,700.00 per year payable monthly from the retirement fund, such amount being one-half the salary he received as chief of police during the year prior to his retirement.

December 19, 1966, respondent petitioned the board for permanent retirement based upon the accumulation of 25 years of continuous service. This was subsequent to the enactment in 1965 of I.C. § 50–2116(i) and prior to repeal, reenactment, and modification, as of April 12, 1967, of provisions relating to establishment of a policemen's retirement fund, S.L. 67, ch. 429, §§ 253–276. Respondent contended that his period of disability should be counted as part of his "continuous service," which would effect an increase of his benefits to an amount equal to one-half the current rate of pay of the office of chief of police. He based his contention on the provisions of I.C. § 50–2116(i),[1] a new section of the

1. The 1967 legislature, by S.L. 67, ch. 429, revised the Policeman's Retirement Fund Act. Formerly I.C., Tit. 50, ch. 21, the Act now comprises I.C., Tit. 50, ch. 15.

police retirement fund act enacted by the 1965 legislature and included in S.L. 1965, ch. 262. The board refused to grant respondent's petition on the ground that he had previously been retired and that therefore, the amendment had no effect on his rights.

May 4, 1967, respondent commenced this declaratory judgment action in the district court. The cause having been submitted upon stipulated facts for decision, the court entered findings of fact and conclusions of law in effect holding that appellant was entitled to retirement based upon 25 years of continuous service, I.C. § 50–2114(a) (1961 amendment); that the period of 25 years continuous service was attained for the reason that the combined periods of appellant's active service and of his disability exceeded 25 years; and that the rate of his retirement compensation would increase to one-half the current rate of pay for the job classification (chief of police) which he held July 14, 1960, the time of disability. I.C. § 50–2116(i) (1965 enactment). Judgment was entered accordingly, from which this appeal ensued.

Appellants, by their assignments, in effect contend that the trial court erred in holding that under the language contained in the amendment, I.C. § 50–2116(i), respondent became eligible for the increased benefits equal to one-half the current salary of the "job classification," i. e., chief of police, "which he held at the time of disability."

Appellants cite the present I.C. § 50–1516 (a) (5),which states, "The decision of the said board as to eligibility allowances or benefits shall be final," for the proposition that the trial court and this court have no jurisdiction to review the determination of the board.

■ Appellants, however have taken I.C. § 50–1516(a)(5) out of its proper context. As written, I.C. § 50–1516(a) refers only to disability retirement, where determinations by the board of eligibility for disability retirement are not reviewable. It is not applicable here.

■ As appellants candidly admit, the complaint establishes that this proceeding arises under the declaratory judgment act, I.C., Tit. 10, ch. 12, and I.R.C.P. 57. Here, I.C. § 50–2108 (recodified 1967 in similar import as I.C. § 50–1508) provides that the board in a city having a policeman's retirement fund "have the power to sue or be sued in all courts of the state in all matters arising out of the administration, management and enforcement of this act." The basic question is whether I.C. § 50–2116(i) grants the right to respondent to obtain additional benefits from the policeman's retirement fund. This obviously is a question arising out of the administration or management of the act; therefore, the board is a proper party to this action. Moreover, since the board denied respondent's petition, and respondent thus has exhausted his administrative remedies, he was entitled to judicial relief. We, therefore, hold that there is a justiciable controversy presented as between the two parties at bar, and that respondent's action for declaratory judgment is the proper form of action. Whitney v. Randall, 58 Idaho 49, 70 P.2d 384 (1937). The district court, therefore properly assumed jurisdiction.

■ Appellants further contend that the district court had no power to enforce the legislative enactment which had been repealed April 12, 1967, prior to the commencement of this action on May 4, 1967.

I.C. § 50–2116(i), a 1965 enactment, was repealed; this sub-section now appears in altered form as I.C. § 50–1516(h). Since however, this appeal deals with the statute as it existed prior to the 1967 revision, the former section numbers will be used in this opinion unless otherwise specified.

50–2116(i). "When a policeman has been disabled and when the period of his

disability combined with his prior service as a policeman makes him eligible for retirement under the provisions of this chapter, he may, upon application to the board, be retired at one-half the current rate of pay for the job classification, or its equivalent, which he held at the time of disability."

There is no merit in appellants' contention. There is no question presented here of impinging on the unquestioned right of the legislature to repeal or alter its own acts. Rather, respondent submitted his verified petition for retirement to the board on December 19, 1966, and the board informed him of the denial of such petition by letter dated January 18, 1967. The board and the district court were both ruling on the law as it existed as of the time of the petition, on December 19, 1966. The subsequent repeal of the statute by the legislature is thus irrelevant to this case.

Moreover, this court recently held that "the rights of the employees in pension plans such as Idaho's Retirement Fund Act are vested, subject only to reasonable modification for the purpose of keeping the pension system flexible and maintaining its integrity." Hanson et al. v. City of Idaho Falls, Idaho, 446 P.2d 634 (1968). Thus, if respondent had acquired pension rights under I.C. § 50–2116(i), those existing rights could not be taken from him by a later act of the legislature. This follows from the compensatory nature of pension plans, as this court held in the cited case.

Appellants next contend that any new rights granted by I.C. § 50–2116(i) should not be available to respondent, since he had already been "retired," and hence all his rights had already vested. They further contend that I.C. § 50–2114 (enacted in 1947) covers the right of permanent retirement, and so provides only for those who (under 65 years of age) "shall have served not less than twenty-five years accumulatively * * *." They note that "twenty-five years of Accumulated Service" is defined in I.C. § 50–2102(i) (enacted in 1947) as follows:

"(i) Twenty-five Years of Accumulated Service: An individual who has been employed by a regularly constituted police department in a city or town in the state of Idaho without having engaged in any other gainful occupation and has had twenty-five (25) years of accumulated service with the same police department of said city or town and has been carried on the payrolls of such department for that period of accumulated time."

It is admitted that respondent cannot comply with the two conditions of this definition, i. e. that he had 25 years of accumulated service *and* be on the payroll of the department for that period of time.

█ The essential question is whether I.C. 50–2116(i), added to the policeman's retirement fund act in 1965, created a new right. The learned district judge, in a succinct memorandum opinion reviewing the legislative history, held that the section did create a new right. We agree with his interpretation of the law, set out as follows:

"The 1965 act [Chapter 262] dealt only with I.C. 50–2116. It deleted the provision that if reinstated after disability that an officer could add pre-disability service to post-disability service for retirement eligibility. The 1965 act added subsection (i) as follows: 'When a policeman has been disabled and when the period of his disability combined with his prior service as a policeman makes him eligible for retirement under the provisions of this chapter, he may, upon application to the board, be retired at one-half the current rate of pay for the job classification, or its equivalent, which he held at the time of disability.'

"The Title of the 1965 act is also significant: 'Amending Section 50–2116, Idaho Code, by providing that an injured policeman may use his disability period in computing retirement eligibility, and by providing the rate of retirement pay.'

"After the 1965 act an officer had the following possibilities:

1. Retirement upon twenty-five years active service.

2. Disability retirement of any time disabled, subject to reinstatement to duty or, if not reinstated, then receipt of separation benefits.

3. Adding active duty time and disability time toward eligibility for permanent retirement.

"The 1965 act [I.C. § 50–2116(i)] effectively abolished any distinction between active duty time and disability time insofar as earning permanent retirement benefits.

\*   \*   \*   \*   \*   \*

"The construction of the laws here involved is guided by I.C. 50–2118 admonishing that the police retirement act be liberally construed with the object of promoting the welfare of the persons subject to its provisions.

"Defendants [appellants] contend that I.C. 50–2114(a) controls and that when plaintiff [respondent] retired under order of the Board his service terminated and he was no longer on the department payroll. This proposition was undoubtedly true under the 1947 act. But the 1965 act created a new right. \* \* \*

"Defendants [appellants] contend that the only permanent retirement is under I.C. 50–2114 and that that section requires twenty-five years accumulated service and that I.C. 50–2102(i) requires for accumulated service that the officer be carried on the payroll for twenty-five years.

"If there is conflict between I.C. 50–2102(i) and I.C. 50–2116(i) then the later must control. It is the later enactment of the legislature and amends by implication the provision of I.C. 50–2102(i). Since there is no prescribed length of service to make a policeman eligible for disability retirement the only possible thing that I.C. 50–2116(i) could refer to in providing that active service be added to disability time is either the provision for twenty-five years active service or twenty-five years of accumulated service. There is no retirement (except disability) based on less than twenty-five years of service. If I.C. 50–2116(i) is to have any logical meaning it must apply to I.C. 50–2102(i). Any conflict

will be resolved in favor of the later enactment."

Appellants next contend that even if I.C. 50–2116(i) did create a new right, such right should not inure to respondent, since he had previously retired, and since the statute admittedly operates only prospectively. They cite the provision of I.C. § 50–2114(a) (1961 enactment) which states, "When the board issues an order of retirement, said order shall terminate and end the services of a person in such police department \* \* \*."

■ We cannot agree with appellants' contentions. First, I.C. § 50–2114(a) (1961 amendment) deals with only the permanent retirement (including disability retirement) based on age and length of service. Respondent was granted a disability retirement under the terms of I.C. § 50–2116(a) (1947 enactment), which retirement would last only so long as the disability continued. That section of the statute provides retirement benefits to a policeman if "incapacitated by injury in the course of duty, or by illness attributable wholly or partially to service as a paid policeman." Since there was no permanent retirement in the granting of disability relief under I.C. § 50–2116, the application of I.C. § 50–2116(i) to respondent does not constitute a retroactive or retrospective application of the statute.

■ Several general statements are made regarding retroactivity of statutes; see 37A Words and Phrases p. 217 (permanent edition, 1950). "A retrospective law is one which affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute." American States Water Service Co. of California v. Johnson, 31 Cal.App.2d 606, 88 P.2d 770 (1939); Ware v. Heller, 63 Cal.App.2d 817, 148 P.2d 410 (1944). Another statement of the same principle is the following:

"A retroactive or restrospective law, in the legal sense, is one that takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposses a new duty, or attaches

a new disability in respect of transactions or considerations already past." 82 C.J.S. Statutes § 412.

Ohlinger v. United States, 135 F.Supp. 40 (D.C. Idaho 1955); Henry v. Jean, 112 So.2d 171 (La.App.1959); Pan American Petroleum Corp. v. Gibbons, 168 F.Supp. 867 (D.C. Utah 1958); Barber v. Barber, 327 Mich. 5, 41 N.W.2d 463 (1950); U.S. Steel Credit Union v. Knight, 32 Ill.2d 138, 204 N.E.2d 4 (1965); Pape v. Department of Labor and Industries, 43 Wash.2d 736, 264 P.2d 241 (1953). In short, a statute is not retroactive unless it changes the "legal effect" of previous transactions or events. Dye v. School District No. 32 of Pulaski County, 355 Mo. 231, 195 S.W.2d 874 (1946); Duff v. Black Diamond Collieries, 161 Tenn. 486, 33 S.W.2d 63 (1930); State ex rel. American Savings Union v. Whittlesey, 17 Wash. 447, 50 P. 119 (1897).

■ I.C. § 50–2116(i), as enacted in 1965, did not change the existing "rights and conditions" of respondent; nor did it change the "legal effect" of any previous event. This is not a case where an employee had already fully retired and a subsequent law would increase his benefits, or perhaps even create the right to a pension which did not previously exist. Here, respondent, as of the time of the 1965 enactment of I.C. § 50–2116(i), still did not have the right to permanent retirement; that is, his service time and disability period as of that time added up only to 24 years, not the required 25. Therefore, his right to the benefits of the new statute, i. e., to compute together his disability time and his period of prior service, in determining retirement eligibility, did not create the right to a change of status until after the new section was in full force.

■ In cases such as this, the law is settled that operation of a statute based in whole or in part upon antecedent facts does not constitute retroactive application of the law. The supreme court of the United States stated the rule: "A statute is not rendered retroactive merely because the facts or requisites upon which its subse-

quent action depends, or some of them, are drawn from a time antecedent to the enactment." Reynolds v. United States, 292 U.S. 443, 54 S.Ct. 800, 78 L.Ed. 1353 (1934). That case dealt with the right of an ex-soldier to pension benefits for hospitalization expenses during a period prior to the passage of a certain statute. See also Cox v. Hart, 260 U.S. 427, 43 S.Ct. 154, 67 L.Ed. 332 (1922). In State ex rel. Highsmith v. Brown Service Funeral Co., 236 Ala. 249, 182 So. 18 (1938), involving a statute altering the reserves necessary for life insurance, the following statement appears: "The Act then would only look to the future in making its requirements for future operation, and to the past only for information on which a computation is to be made to ascertain an amount to be effective for such future operation. A law is not retroactive merely because it looks to the past for such purpose." Cf. State ex rel. Bishop v. Board of Education of Mount Orab Village School District, Brown County, 139 Ohio St. 427, 40 N.E.2d 913 (1942).

In the case at bar, the right which respondent seeks to enforce did not accrue until after the enactment in 1965 of the statute in question, and the period anterior to its passage is merely used for purposes of computation. Given these circumstances, we hold that I.C. § 50–2116(i) does apply to respondent, and that this construction does not constitute a retroactive or retrospective application thereof.

■ This court is constrained to refer to Brooks v. City of Los Angeles, 243 Cal. App.2d 436, 52 Cal.Rptr. 392 (1966), a case similar to the present one, but which holds contrary to our holding herein. In that case the facts were similar to those in the case at bar, and involved California enactments similar to those of Idaho construed herein. However, the distinction between the statutes of the two states relating to disability retirement is crucial, and accounts for the difference of opinion in the cases. Article XVII, § 182 of the Los Angeles city charter provides that service-connected disability pensions shall be paid *for life*

and cease only "when the disability * * * ceases *and* such member * * * shall have been restored to active duty." Under that enactment the court held that the statutory provision which permitted combination of both service and disability time for purposes of computing retirement time applied only in the case where an officer had been disabled and subsequently restored to active duty. The situation under the Idaho statute is quite different. I.C. § 50–2116(a) created the right to receive benefits only so long as the disability continues. When the disability terminates, so do the benefits, regardless of whether the policeman resumes active duty. Thus, where the California court was able to view the policeman's pension rights as adequately covered by either of two independent systems (i. e., disability or normal retirement), it held that the section which might on its face connect the two systems, in reality merely clarified a questionable element in the normal retirement system. Here, I.C. § 50–2114 still provides the only permanent retirement system for policemen in Idaho. I.C. § 50–2116(i) was intended to bring disabled policemen within the purview of that system.

Judgment affirmed. Costs to respondent.

TAYLOR and McFADDEN, JJ., concur.

SPEAR, Justice, with whom McQUADE, Justice, concurs, dissenting:

First, I must state that this court is laboring under a tremendous handicap in resolving the issues raised by the parties because of the meager information contained in the stipulation of facts upon which this cause was submitted to the trial court and, of course, the same insufficient facts are now before this court. Because these facts as stipulated are so skimpy—for instance the record does not contain respondent's written request for disability retirement nor the order of the Board granting such retirement, presumably on July 18, 1960—it appears to me we must resort to the acts of the parties or their failure to act in order to properly construe the statutes involved

and to determine whether or not respondent is in fact entitled to the permanent regular retirement at the increased rate of pay as he contends.

The stipulated facts do indicate that respondent became an active policeman for the City of Coeur d'Alene on July 18, 1941 and that he actively served on the force until July 15, 1960, when he was granted a disability retirement—a total disability retirement for the full amount provided under the 1947 act, and being one-half of the salary he had received during the preceding year as chief of police. It is interesting to note that the stipulated facts disclose this retirement order of July 15, 1960, was granted by the Board *"because of illness attributable in great part to his services as a policeman."* The record is silent as to the nature of the illness which rendered respondent totally disabled from rendering any service to the police department. The record is also silent on whether respondent has ever requested or so much as indicated his desire to be reinstated to active service in the department in any capacity. The facts merely state "plaintiff has continued to receive said retirement pay to this date." From this statement we must presume respondent has not taken any steps toward returning to active duty with the police department.

It is also worthy of note that on March 13, 1961, I.C. § 50–2116 was drastically amended and supplemented by providing, among other things that:

"(a) Any paid policeman incapacitated by injury * * * *or by illness as a result of the performance of his official duties as a paid member of a police department* shall be retired so long as such disability shall continue in a degree which prevents efficient service, and during such disability * shall be paid from the said fund * * * *disability benefit as follows:*

"(1) *For disability attributable wholly to service as a paid policeman, a monthly sum equal to one-twenty-fourth of the amount of the annual salary attached to*

the rank which he held in the said police department of the city, or town, for a period of one year next preceding the date of such retirement;

"(2) *For disability attributable only in part to service as a paid policeman, a monthly disability benefit in an amount to be fixed by the board of police retirement fund commissioners, but commensurate with the extent or proportion such service-connected disability relates to such person's pre-existing injury or infirmity. The said board may increase or decrease such monthly benefits whenever the impairment in the person's earning capacity warrants an increase or decrease, but in no event shall a monthly benefit paid to such person exceed the benefit provided under sub-paragraph (1) above.*

"(3) *Provided, however, that if any such paid policeman is entitled to receive compensation under the Workmen's Compensation Law of the state of Idaho as it now exists, or shall hereafter be amended, the amount payable under this act shall be reduced by the amount to which said paid policeman is entitled under the Workmen's Compensation Law.*

"(4) *The board of police retirement fund commissioners shall require medical examinations of all applicants for retirement by reason of disability, and shall, at the discretion of said board, require periodic medical examinations of persons receiving a disability retirement allowance. The said board shall prescribe general rules for medical examinations required hereunder, and may provide for the discontinuance of any disability retirement allowance and forfeiture of all rights under this act for any person who refuses to submit to such an examination.*

"(5) *The decision of the said board as to eligibility allowances or benefits shall be final.*

"(6) *When a disability beneficiary is determined by the said board to be not incapacitated in a degree which prevents efficient service, his disability retirement allowance shall be cancelled forthwith.*

If thereafter such person be reinstated in the service of his department, he shall be credited with the number of years of continuous service with which he was credited at the time of his retirement for disability.

"(7) *Such a person, who for any reason is not reinstated in the service of his department, shall receive separation benefits according to his entitlement, as provided under Section 50–2115, Idaho Code.*" (1961 Session Laws, pp. 599–600)

The record contains no reference of any action by the Board to require a medical examination of respondent at any time during the period he has been drawing full disability retirement in spite of the fact that the original order granted respondent's retirement because of an illness *attributable in great part* to his services as a policeman. Therefore we must assume that the Board in fact did not require any such medical examination to determine how much of respondent's disability was attributable to service as a paid policeman as provided in the 1961 amendment hereinbefore quoted.

From these acts or failure to act on the part of the respondent and the Board, I can reach no other conclusion except that the July 15, 1960 retirement was, *in fact,* intended by all the parties involved to be a *permanent* total disability retirement of respondent. This conclusion is supported by the fact that respondent has not rendered any active service to the department since the date of his retirement, i. e., July 15, 1960; and by his petitioning the Board for a permanent regular retirement and by bringing this action to require the Board to allow such retirement, respondent has conclusively evidenced his intention never to return to active service with the police department.

Taking into consideration these assumed facts and the conclusions to be drawn therefrom as set forth herein, the reasoning of the California Court of Appeals in Brooks v. City of Los Angeles, 243 Cal.App.2d 436, 52 Cal.Rptr. 392 (1967), is most persuasive,

and, in my opinion, should be followed by this court. The majority opinion recognizes that *Brooks* is contrary to the result reached by the majority and attempts to distinguish the two factual situations noting some difference in terminology used in our statutes and in the Los Angeles city charter. With this attempted distinction I do not agree.

In *Brooks* the plaintiffs had all received disability pensions and they had not been restored to active duty. This is precisely the factual situation with which we are faced in the cause at hand. One section of the city charter provided for "service" pensions rather than the "disability" pensions, which the retired officers had been receiving, after the expiration of twenty years or more from their employment dates. The particular part of the section relied upon by the officers provided in part:

"In computing the aggregate period of service of a member * * * for the purposes of this section, there shall be included the period or periods of time, if any, while such member was on disability retirement * * *."

The court paraphrased this in the following manner:

"Stated in another way, plaintiffs' claim is that since 20 years or more have elapsed from the times they were appointed as employees, they are entitled to *service* pensions even though they have been retired on disability pensions for many years and are still disabled and have not been restored to active duty."

This is exactly the contention of respondent herein.

The court further pointed out that under certain sections of the charter there was provided that a disabled member shall be *retired from further service* and shall thereafter receive a pension, *during his lifetime*, provided that the pension shall cease if the disability ceases and if the member *shall have been restored to active duty*. Another section provided that pensions so granted should remain in full force and effect for the period granted. In construing

these provisions the California court concluded:

"If plaintiffs, who already have been retired from further service under sections 182 and 182¼ (on account of disability), and have not be restored to active duty, were now permitted to be retired also under section 181 (for 20 years or more of service), it would appear that they would be entitled to continue receiving their present disability pensions. * * *"

The court ruled that it was not reasonable to conclude that the retirement or pension sections of the charter were intended to create such a result.

It must here be pointed out that there is nothing in the various statutes relied upon by respondent herein prohibiting him, if his contentions be upheld, from petitioning for and being granted both the permanent disability retirement, which he is now receiving and has been receiving for eight years, and the permanent regular retirement which he seeks in this action. The mere fact that respondent voluntarily agreed in his amended complaint to relinquish all his rights for retirement under I.C. § 50–2116 (i) does not in any manner affect his legal right to the same, and the reasoning of the court in *Brooks* is equally applicable to the cause at hand.

For additional reasons not pertinent here, the California court concluded that the only reasonable interpretation of the retirement provisions involved was that the time of disability retirement may be included in computing the years of service required for regular retirement only if the disability has terminated and the person has been restored to active duty.

With this I agree.

In my opinion, this cause should be resolved in one of two manners, either (1) that it be remanded to the trial court to permit the parties to provide the court with all the facts essential to determining these issues, or (2) reverse the judgment of the trial court, deny respondent permanent retirement under I.C. § 50–2114(a) and order his rights to full disability retirement

(which he has been receiving) so long as his illness continues in the degree which prevents efficient service as provided in I.C. § 50–2116 as amended by the 1961 Session Laws, pp. 599–600 (now codified as I.C. § 50–1516 in the new volume 9).