636 P.2d 745

In the Matter of: Amended Application for Permit No. 36–7659 in the Name of HIDDEN SPRINGS TROUT RANCH, INC.

HIDDEN SPRINGS TROUT RANCH, INC., Appellant,

v.

C. Stephen ALLRED as Director Department of Water Resources and R. W. Stevens, Protestant, and Joseph C. Greenley, as Director, Department of Fish and Game, Protestant, Respondents.

No. 13350.

Supreme Court of Idaho.

Oct. 23, 1981.

Robert C. Weaver, of Weaver & Dykas, Buhl, for appellant.

David H. Leroy, Atty. Gen., Boise, for respondents.

Phillip J. Rassier, Deputy Atty. Gen., Boise, for respondents Department of Water Resources.

Matthew J. Mullaney, Jr., Boise, for respondent Stevens.

DONALDSON, Justice.

On December 17, 1976, appellant Hidden Springs Trout Ranch, Inc. (Hidden Springs) filed an application with the respondent Department of Water Resources for a water appropriation permit authorizing diversion of 100 cubic feet per second of water from Billingsley Creek for fish propagation purposes. Respondent R. W. Stevens, a downstream appropriator with senior priority, filed a protest to the approval of this application with the Department. His contention in protest was that the Hidden Springs diversion would bring about a reduction in water quality under existing water rights.

The Department advised Stevens that under existing statutory regulation water quality was an inappropriate consideration in deciding upon an application. Stevens unsuccessfully sought a writ of prohibition to halt Department hearings on the application. Thereafter, on January 9, 1978, a conference and hearing were held on the Hidden Springs application.

While the application was thus pending before the Department, the Idaho Legislature amended I.C. § 42–203 with an emergency clause giving the section an effective

date of March 29, 1978. The amended I.C. § 42–203 provided that a new criterion, local public interest, would be a valid consideration in application proceedings.

On July 21, 1978, the Department issued a memorandum decision and order approving the Hidden Springs application subject to the condition that any person appearing in the matter would have thirty days to request that the record be reopened and a hearing be held for the purpose of receiving evidence relating to the issue of local public interest as set forth in the amended I.C. § 42–203. Thereafter, respondent Idaho Department of Fish and Game and respondent Stevens effectively requested that the record be reopened to receive local public interest evidence.

Subsequently, Hidden Springs filed a petition in the district court seeking modification of the Department's memorandum decision and order by the striking of the thirty-day condition. The district court, following hearings on the matter, concluded that the amended I.C. § 42–203 did apply to pending applications before the Department, holding the "local public interest standard" to be therefore applicable and not retroactive in application. The court denied the petition. Hidden Springs appeals.

Prior to its amendment on March 29, 1978, I.C. § 42–203 contained four criteria which the Director of the Idaho Department of Water Resources was to consider in taking action upon an application for a permit to appropriate the public waters of the state of Idaho. The four criteria were:

(1) Whether the proposed appropriation will reduce the quantity of water under existing water rights;

(2) Whether the water supply itself is insufficient for the purpose for which it is sought to be appropriated;

(3) Whether it appears to the satisfaction of the department that such application is not made in good faith, is made for delay, or speculative purposes; and

(4) Whether the applicant has sufficient financial resources with which to complete the work involved therein.

When the appellant filed its application for the permit in question the Department of Water Resources was limited to a consideration of these four criteria. Likewise, at the time of the conference and hearing on the application the parties and the Department were restricted to consideration of these same four criteria. It was not until March 29, 1978, that I.C. § 42–203 was amended to provide that for all applications, consideration should be given by the director to all of the criteria set forth in the statute, whether or not the application is protested, including an additional fifth criterion:

(5) Whether the proposed appropriation will conflict with the local public interest, where the local public interest is defined as the affairs of the people in the area directly affected by the proposed use.

The central question on this appeal is whether there has been an impermissible retroactive application of a statute, specifically the amended I.C. § 42–203. We agree with the holding of the district court that there has been none and therefore affirm its order denying appellant's petition.

■ It is the general rule in Idaho that a statute should not be applied retroactively in the absence of a clear legislative intent to that effect. I.C. § 73–101; *State v. Lindquist*, 99 Idaho 766, 589 P.2d 101 (1979); *Blankenship v. Myers*, 97 Idaho 356, 544 P.2d 314 (1975); *Edwards v. Walker*, 95 Idaho 289, 507 P.2d 486 (1973). However, it is also the rule in Idaho that retroactive legislation is only that which affects vested or already existing rights. *Frisbie v. Sunshine Mining Co.*, 93 Idaho 169, 457 P.2d 408 (1969); *Engen v. James*, 92 Idaho 690, 448 P.2d 977 (1969); see *State v. Lindquist, supra* (Donaldson, J., dissenting opinion). In the instant case, the focus is thus upon the status of appellant, whether it as an applicant had a vested or already existing right which could not be impinged upon by application of amended I.C. § 42–203.

■ Initially, it is important to note that we do not discuss the status of one who has

acquired an adjudicated right, a licensed right or an unadjudicated "constitutional" right to water as defined in Idaho statutes or the Idaho Constitution. Nor are we concerned with the status of one who has already procured a water appropriation permit. *Cf. Big Wood Canal Co. v. Chapman*, 45 Idaho 380, 263 P. 45 (1927) (a permittee secures an inchoate right, a merely contingent right which may ripen into a complete appropriation but is not real property and is merely a consent given by the state to construct and acquire real property). Rather, we address today only the status of one who has but initiated the statutory process by the filing of an application for a water appropriation permit and whose application is properly pending when legislation is passed which impacts upon the permit application.

A permit applicant applying to appropriate water has no prior individually vested right to the water at the time of application; the applicant does not already own the water. The applicant's status is therefore not analogous for example to that of a landowner who has a vested right to put the land he owns to whatever use is permitted by the zoning ordinances in effect at the time the landowner makes application for a building permit. *See Cooper v. Board of County Commissioners*, 101 Idaho 407, 614 P.2d 947 (1980) (on petition for rehearing); *Ready-To-Pour, Inc. v. McCoy*, 95 Idaho 510, 511 P.2d 792 (1973); *Ben Lomond, Inc. v. City of Idaho Falls*, 92 Idaho 595, 448 P.2d 209 (1968).

Moreover, the public waters of the state are subject to the regulation and control of the state as generally mandated in Article 15 of the Idaho Constitution and statutorily delineated throughout Title 42 of the Idaho Code. We do not find that the mere initiation of the statutory process for water appropriation immediately grants the applicant vested rights in the water. The applicant gains but an inchoate right upon filing of the application which may ripen into a vested interest following proper statutory adherence.

Accordingly, in the instant case, at the time the legislation in question was enacted, the status of the appellant had progressed no further than that of an applicant with a pending application. Appellant therefore possessed no vested right which could be interfered with by application of the legislation. The filing of the application for the permit did of course establish the priority date of the appropriation under the doctrine of relation back, but any such priority date right is nonetheless contingent upon future statutory adherence and issuance of a license, I.C. § 42–219, and is not therefore a right rising to any vested level which would preclude application of the amended I.C. § 42–203.

No other issue as raised by appellant presenting an incident of reversible error, we therefore affirm the order of the district court denying appellant's petition to modify the order of the Department of Water Resources. Costs to respondents. No attorney fees allowed.

BISTLINE and SHEPARD, JJ., concur.

BISTLINE, Justice, concurring specially.

In the only other case to address the exact question before this Court, *Stempel v. Department of Water Resources*, 82 Wash.2d 109, 508 P.2d 166, 172 (1973), the court held:

> "The appellant-department contends that SEPA [State Environmental Policy Act] and WRA [Water Resources Act] may not be applied in this case because the application for the water use permit, its issuance, the contested hearing, and the superior court review all occurred prior to August 9, 1971, the effective date of the acts. Although these events did transpire before the effective date of SEPA and WRA, the agency's action had not been finalized prior to the passage of the statutes and remains tentative even to this date. The statutes' application in this case cannot be deemed retroactive, although relating to some events occurring prior to the statutes' enactment."

The result and reasoning in *Stempel* are entirely correct.[1] If one could gain an interest in water which would be insulated from subsequent legislation simply by filing an application with the Department of Water Resources, it would be difficult, if not impossible, for the legislature to protect the public's interests in and uses of the waters of this state. The state, as a sovereign, owns the unappropriated waters within its borders.

"Such interest or title is not 'in the proprietary sense, but rather in the sovereign capacity as representative of all the people for the purpose of guaranteeing that the common rights of all shall be equally protected and that no one shall be denied his proper use and benefit of this common necessity.' *Walbridge v. Robinson*, 22 Idaho 236, 125 P. 812, 814, 43 L.R.A., N.S., 240." *Poole v. Olaveson*, 82 Idaho 496, 502, 356 P.2d 61, 65 (1960).

A clear example of state action designed to insure that the common rights of all to the beneficial use of Idaho waters is equally protected is our minimum stream flow legislation, I.C. § 42–1501 *et seq.* The Department of Water Resources, pursuant to its constitutional duty—*see* ID. Const. art. XV, § 7, has developed a state water plan, and in 1978, the same year that minimum flow legislation was adopted, the legislature moved to insure that the state water plan included safeguards for certain specified waters of the state. I.C. § 42–1736A, which was adopted in 1978, provides in part that:

"(2) In order to preserve the stream flows the following criteria shall be established as the beneficial use in the public interest as the minimum daily flow on the main stem of the Snake River:

| Gaging Station | Minimum Daily Flow | |
| --- | --- | --- |
| Milner | 0 | cfs |
| Murphy | 3,300 | cfs |
| Weiser | 4,750 | cfs |

"(3) In order to retain the stream flows and hydro-base, the following criteria shall be established as the minimum daily flow on the main stem of the Snake River:

| Gaging Station | Minimum Daily Flow | |
| --- | --- | --- |
| Johnson's Bar | 5,000 | cfs" |

The district court specifically found that on March 29, 1978 (shortly before I.C. §§ 42–1501 *et seq.* & 42–1736A became effective), there were over 300 applications to appropriate a total of more than 13,000 cubic feet per second from the Snake River below Milner dam.[2] Obviously if each of these applications was insulated from subsequent legislation because the application conferred a "right" upon the applicant, it would be difficult, and on some streams well-nigh impossible, to implement the express legislative intent of I.C. § 42–1501 *et seq.* and I.C. § 42–1736A to establish minimum flows, at least without compensating the applicants for whatever "interest" they might have in a pending application.[3] Although it may be more difficult to assess the impact of prior applications on the effectiveness of legislation dealing with "local public interest" than on legislation establishing minimum flows, the principle remains the same. According recognition as a vested right, or even some lesser interest which does not rise to the level of a vested right but which is nevertheless insulated from subsequent legislation, in having filed a mere application for a water appropriation permit, could have severe impacts upon present and future attempts at efficient, fair and uniform implementation of water law and policy in Idaho.

Finally, I feel compelled to note that the "finality" of the director's order was not raised below or in this Court. The dissent asserts that "[a]lthough the paragraph addressing judicial review in I.C. § 42–203

1. *Stempel*, a unanimous opinion, is brought to our attention in the briefs submitted. Yet the dissenters do not even attempt to illustrate any fallacies in its reasoning.

2. It appears that the district court misunderstood the testimony of Stephen Allred, the director of the Department of Water Resources,

in this regard. Mr. Allred testified that *statewide* there were applications for some 13,000 cfs pending. The lesson to be drawn from this example, however, remains the same.

3. Valuation of such an interest in a condemnation proceeding would be extremely difficult.

remained in the statute following the passage of the APA . . . there is nothing in I.C. § 42–203 which conflicts with I.C. § 67–5215, except for the time limit for bringing an appeal which is not at issue here." I.C. § 42–203 provided in part at the time that the order in question was appealed that "[a]ny person . . . feeling aggrieved by the judgment of the director . . . may appeal therefrom to the district court . . . within sixty (60) days from the ruling or action of the director . . . ." I agree that the time limit for bringing an appeal is not at issue here. It is worthy of note, however, that the finality of the director's order is not at issue, either, and it seems a bit hard-handed for the dissent to raise the issue of finality and then decline to address the time limits of I.C. § 42–203, when those time limits forced the filing of this appeal. It is also worthy of note that the APA does not define "final decision," while the Appropriation of Water Act *does* indicate the type of decision which triggers the sixty day appeal time. I.C. § 42–204 provides, and provided at the time that this appeal was taken, that: "The approval of an application shall be indorsed thereon, and a record made of such indorsement in the department of water resources. *The application so indorsed shall constitute a permit . . . .*" (Emphasis added.) Clearly, the endorsement of an application is the "judgment" contemplated by the approval of application provisions of I.C. § 42–203. The application at issue here *was endorsed* by the director within the meaning of I.C. §§ 42–203 and 42–204 and this appeal was taken from that endorsement. Appellant was faced with the distinct possibility that, if the sixty day appeal period of I.C. § 42–203 were to run without a notice of appeal being filed, it would be precluded forever from appealing the order of the director. Faced with this limit, and the very real probability that the hearing and decision on the issue of local public interest would not occur until *after* the sixty days had run, appellant wisely chose to comply with the apparent requirement of I.C. § 42–203 and appeal within the statutory time period. After all, the appellant is concerned in this appeal, not with the director's decision on the merits of the local public interest question (which decision has not yet been made), but rather with the fact that the director was willing to consider local public interest *at all.* That part of the director's order was final and irreversible. If requested within thirty days, he *would* hold a hearing to consider local public interest. Even if the APA contained a definition of a final decision and I.C. § 42–204 did not (the opposite is true), the provision in I.C. § 67–5215(a) that "A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final decision would not provide an adequate remedy" would be applicable here.

BAKES, Chief Justice, dissenting:

The Department of Water Resources approved appellant's water permit application with the proviso that protesters could obtain a review of the approval on public interest grounds by requesting a hearing within thirty days. Such contingent approval of the appellant's permit application does not constitute a final agency decision entitled to judicial review. Consequently, this appeal should not have been substantively reviewed by either the district court or this Court.

I.C. § 42–203 was originally enacted in 1929. 1929 Idaho Sess. Laws, ch. 212, § 1. It established requirements for notice and a hearing in connection with the review of an application for a water permit, and also made provision for judicial review of the responsible agency's "judgment" upon the application. However, in 1967, the legislature enacted the Administrative Procedure Act (APA), I.C. § 67–5201 *et seq.* In so doing, the legislature also specifically amended I.C. § 42–203 to require that action under that statute conform to the standards of the APA. 1967 Idaho Sess. Laws, ch. 374, § 2.

I.C. § 67–5215 of the APA states the following:

"67–5215. JUDICIAL REVIEW OF CONTESTED CASES.—(a) A person who has exhausted all administrative remedies

available within the agency and who is aggrieved *by a final decision* in a contested case of an agency other than the industrial commission or the public utilities commission is entitled to judicial review under this act. This section does not limit utilization of or the scope of review available under other means of review, redress or relief provided by law. A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy." (Emphasis added.)

Two points should be noted. First, I.C. § 67–5215 by its own terms applies to all state agencies other than the Industrial Commission or the Public Utilities Commission. In addition, the definition of agency in I.C. § 67–5201(1) plainly includes the Department of Water Resources when it states, " 'agency' means *each* state board, commission, department or officer authorized by law to make rules or to determine contested cases, except those in the legislative or judicial branch, the state militia and the state board of corrections." (Emphasis supplied.) Second, I.C. § 67–5215 clearly requires that in order for an agency decision to be appealable the decision must be "final." Certainly a decision such as the one in the case at bar, which is contingent upon the holding of another hearing and subject to change by the agency, cannot be termed final.

Although the paragraph addressing judicial review in I.C. § 42–203 remained in the statute following the passage of the APA and related amendments, there is nothing in I.C. § 42–203 which conflicts with I.C. § 67–5215, except for the time limit for bringing an appeal which is not at issue here. In addition, the legislature in 1980 made it abundantly clear that judicial review of Department of Water Resources actions is for "final" decisions or orders, and that such review is subject to the provisions and standards of I.C. § 67–5215. I.C. § 42–1701A(4). Although I.C. § 42–1701A was not effective during the time of the proceedings below, it seems clear that the legislature, by enacting that statute, was

merely expressing in more explicit terms the procedure for appeal which was already applicable to the Department of Water Resources under the APA. For these reasons, I dissent from the majority's review of this case, and the questionable result that it reaches on the merits when it states that an applicant for a water permit has no property right worth protecting from *ex post facto* legislation. *See County of Tuolumne v. State Board of Equalization, et al.,* 206 Cal. App.2d 352, 24 Cal.Rptr. 113 (Cal.App.1962).

McFADDEN, J., concurs.