959 P.2d 449

In The Matter of SRBA Case No. 39576
Basin–Wide Issue # 9 (PWR 107)
Entered December 9, 1996.

UNITED STATES of America, Appellant,

v.

STATE of Idaho; J.R. Simplot Co.; Lemhi
Irrigation Co.; Dave Nelson, Lola
Coates, San Felipe Ranch; Harry R.
Bass; Ted S. Blackstock; Richard Bran-
dau; William J. Brockman; Michael F.
Hanley, IV; Jerry L. Hoagland; Thomas
Ballman Hook; Tim Lowry; Bill Lowry;
Paul Nettleton; R.J. Smith; Wiley F.
Smith; Mitchell D. Sorenson; Robert
Thomas; Young Harvey Walker, Re-
spondents.

No. 23587.

Supreme Court of Idaho,
Twin Falls, Nov. 1997 Term.

April 6, 1998.
Rehearing Denied July 29, 1998.

Betty Richardson, United States Attorney, Boise; William B. Lazarus, Department of Justice, Washington, D.C.; Randall J. Bramer, Department of Justice, for appellant United States of America. William B. Lazarus argued.

Alan G. Lance, Idaho Attorney General; Clive Strong, Deputy Attorney General; David J. Barber, Deputy Attorney General, Boise, for respondent State of Idaho. David J. Barber argued.

Terry T. Uhling and Shawn D. Ysursa, Boise, for respondent J.R. Simplot, Co. Shawn D. Ysursa argued.

WALTERS, Justice.

This appeal raises a question of federal law within the Snake River Basin Adjudication (SRBA), a suit in the district court for the general adjudication of water rights in the Snake River water basin. The dispute in the instant action concerns a claim by the United States that it has a federal reserved water right for all springs and waterholes which are located on lands withdrawn from the public domain. The claim is predicated upon an executive order issued in 1926, entitled Public Water Reserve No. 107 (PWR 107). The SRBA court held that PWR 107 did not create a valid basis for a federal reserved water right, and the United States has appealed. We conclude that PWR 107 provides a valid reservation of water rights by the federal government for the limited purpose of stockwatering by permitees under the Taylor Grazing Act and, accordingly, reverse the order of the SRBA court.

## I.

### FACTS AND PROCEDURAL BACKGROUND

The United States filed over 11,000 claims in the SRBA asserting a reserved water right pertaining to PWR 107. On November 5, 1995, one of the parties to the adjudication filed a motion to designate the alleged reserved right under PWR 107 as a basin-wide issue. On March 8, 1996, the SRBA district court entered an order granting the motion. The order designated the question: "Whether Public Water Reserve 107 is a valid basis for a federal reserved water right?" as Basin Wide Issue No. 9.

Following briefing and argument, the SRBA court entered its decision and order on December 9, 1996. The court determined that PWR 107 was issued to prevent the control of adjacent land through monopolization of water sources by individual homesteaders who are allowed to settle on the public domain. The court further held that the purpose of PWR 107 was to reserve the land immediately surrounding springs and waterholes to ensure that water would remain available for public use and appropriation, but that PWR 107 did not expressly or impliedly reserve water or appropriate water for use by the United States. In addition, the SRBA court essentially concluded that if there was an implied reservation of the right to water in order to carry out the purposes of PWR 107, that right no longer existed as a result of the enactment by Congress in 1976 of the Federal Land Policy and Management Act (FLPMA). Therefore, the SRBA court concluded that PWR 107 was not a valid basis for a federal reserved water right in the SRBA. The decision was certified as final under Idaho Rule of Civil Procedure 54(b), allowing the United States to pursue this appeal.

## II.

### PWR 107 AS A BASIS FOR A FEDERAL RESERVED WATER RIGHT.

#### A. Federal Reserved Water Rights in General.

The federal reserved water rights doctrine arises from the decision of the United States Supreme Court decision in *Winters v. United States*, 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340 (1908). In *Winters*, the Court held that when Congress established an Indian reservation, it also, by implication, reserved the water rights necessary to achieve the reservation's purpose. In a later case, the Court explained:

[W]hen the Federal Government withdraws its land from the public domain and

reserves it for a federal purpose, the Government, by implication, reserves appurtenant water then unappropriated to the extent needed to accomplish the purpose of the reservation. In so doing the United States acquires a reserved right in unappropriated water which vests on the date of the reservation and is superior to the rights of future appropriators. Reservation of water rights is empowered by the Commerce Clause, Art. I § 8, which permits federal regulation of navigable streams, and the Property Clause, Art. IV, § 3, which permits federal regulation of federal lands. The doctrine applies to Indian reservations and other federal enclaves, encompassing water rights in navigable and nonnavigable streams.

*Cappaert v. United States*, 426 U.S. 128, 138, 96 S.Ct. 2062, 2069, 48 L.Ed.2d 523 (1976). The doctrine of reserved water rights has been extended to include public lands reserved for a particular governmental purpose, such as the creation of parks, wildlife refuges, and national forests.

■ The reserved right is not without limitation, however. The Court in *Cappaert* also advised that "[t]he implied-reservation-of-water-rights doctrine ... reserves only that amount of water necessary to fulfill the purpose of the reservation, no more." *Cappaert*, 426 U.S. at 141, 96 S.Ct. at 2071 (citing *Arizona v. California*, 373 U.S. 546, 600–01, 83 S.Ct. 1468, 1498, 10 L.Ed.2d 542 (1963)). Furthermore, if "water is only valuable for secondary use of the reservation ... there arises the contrary inference that Congress intended, consistent with its other views, that the United States would acquire water in the same manner as any other public or private appropriator." *United States v. New Mexico*, 438 U.S. 696, 702, 98 S.Ct. 3012, 3015, 57 L.Ed.2d 1052 (1978). The necessity of water must be so great that without the water the reservation would be "entirely defeated." *Id.* at 700, 98 S.Ct. at 3014. Therefore, where a reservation of public land for a particular purpose does not expressly declare

that water is needed as a primary use to accomplish the purpose of the reservation, or the exact purpose of the reservation is not clearly set forth in terms readily demonstrating the necessity for the use of water, the courts must consider the relevant acts, enabling legislation and history surrounding the particular reservation under review to determine if a federal reserved water right exists.

## B. Public Water Reserve 107.

■ We thus turn to an examination of PWR 107, together with its enabling legislation and the circumstances and history surrounding its creation, to determine whether a federal reserved water right exists in the present case. In 1926, President Calvin Coolidge signed the executive order entitled "Public Water Reserve No. 107." PWR 107 provides:

> [I]t is hereby ordered that every smallest legal subdivision of public land surveys which is vacant, unappropriated, unreserved public land and contains a spring or water hole, and all land within one quarter of a mile of every spring or water hole located on unsurveyed public land, be and the same is hereby withdrawn from settlement, location, sale or entry, and reserved for public use in accordance with the provisions of Section 10 of the Act of December 29, 1916.

The authority for withdrawals under PWR 107 is provided in the December 29, 1916, statute known as the Stock Raising Homestead Act (SRHA) and in the Pickett Act of 1910.[1] The first piece of enabling legislation for PWR 107 was the withdrawal provision of the Pickett Act, which was incorporated by reference in the SRHA of 1916. The Pickett Act, 43 U.S.C. § 141, provided:

> [T]he President may, at any time in his discretion, temporarily withdraw from settlement, location, sale, or entry any of the public lands of the United States, including the District of Alaska, and reserve the

1. Sections 300 and 141 of the SRHA and the Pickett Act, respectively, were repealed by the Federal Land Management Act (FLPMA), Pub.L. 94–579, 905 Stat. 2744 (1976) (codified at 43 U.S.C. §§ 1701 *et seq.* (1986)). However, the

FLPMA provided that all withdrawals in force on the date of enactment of FLPMA shall remain in force until specifically changed in accordance with FLPMA.

same for waterpower sites, irrigation, classification of lands, or other public purposes to be specified in the orders of withdrawals, and such withdrawals or reservations shall remain in force until revoked by him or by an Act of Congress.

In short, the Pickett Act of 1910 provided the President with the broad discretion to temporarily withdraw lands and reserve such lands for public purposes. Subsequently, Congress enacted the SRHA of 1916, which authorized the President to reserve lands containing waterholes or other bodies of water needed or used by the public for watering purposes, and delegated the management of such lands to the Secretary of the Interior. Section 10 of the SRHA of 1916, 43 U.S.C. § 300, states:

> [L]ands containing water holes or other bodies of water needed or used by the public for watering purposes shall not be designated under this Act but may be reserved under the provisions of [the Pickett] Act of June twenty-fifth, nineteen hundred and ten, and such lands heretofore or hereafter reserved shall, while so reserved, be kept and held open to the public use for such purposes under such general rules and regulations as the Secretary of the Interior may prescribe.

The Committee Report on the SRHA of 1916 noted:

> This is a new section and authorizes the Secretary of the Interior to withdraw from entry and hold open for the general use of the public, important water holes, springs, and other bodies of water that are necessary for large surrounding tracts of country, so that *a person cannot monopolize or control a large territory by locating as a homestead the only available water supply for stock in that vicinity.* [Emphasis in original.]

H.R.Rep. No. 35, 64th Cong., 1st Sess. 18 (1916), *quoted in United States v. City and County of Denver,* 656 P.2d 1, 31 n. 48 (Colo. 1982).

Following adoption of the SRHA of 1916, the Secretary of the Interior prepared PWR 107 as a proposed executive order for the President. The order was transmitted to President Coolidge by the Secretary on April 17, 1926, together with a letter stressing to the President the need to prevent the monopolization of public grazing lands by private individuals controlling the water. The Secretary's letter recited:

> The control of water in the semi-arid regions of the west means the control of the surrounding grazing areas, possibly in some regions millions of acres, and in view of the pending bill to authorize the leasing of grazing lands upon the unreserved public domain, it is believed important to retain the title to and supervision of such spring and water holes on the unreserved public domain as have not already been appropriated.[2] [Footnote added.]

On the same day, April 17, 1926, President Coolidge issued PWR 107 withdrawing all unreserved public land containing a spring or waterhole as stated.

After considering the plain and ordinary words of the enabling statutes and executive order underlying PWR 107, we conclude that PWR 107 evidences an express intention by Congress that reserves a water right in the United States.

## C. Nature of Reserved Right

In the present case, the United States has limited its claim for a reserved water right to stock water consumption. The United States asserts that the purpose of PWR 107 is to reserve water for public use and appropriation as a source for permittees under the Taylor Grazing Act. The United States persuasively argues that such a reservation of stock water is needed in order to ensure the perpetual use of the water for stockwatering purposes by whichever member of the public happens at any time to have the grazing permit for the lands containing the relevant springs and waterholes. The United States further points out that if the water is available for private appropriation, then individuals could monopolize the water

**2.** The Secretary's acknowledgement of pending legislation which would allow grazing leases on unreserved land in the public domain was in reference to what later became known as the Taylor Grazing Act. 43 U.S.C. §§ 315 *et seq.* (1934).

rights for their permanent, exclusive use, thereby precluding stockwatering access to those holding grazing permits for those lands.

We agree with the United States and the observation by the Colorado Supreme Court that the purpose of PWR 107 includes a federal reserved water right and that the United States has the right to administer those water rights. Both the legislative history surrounding the SRHA of 1916 and the SRHA itself provided the Department of the Interior with the "authority to regulate public springs and water holes so that no person could monopolize or control vast areas of western land by homesteading the only available water supply." *United States v. City and County of Denver*, 656 P.2d at 31. In addition, the letter from the Secretary of the Interior to the President, which was written in contemplation of the then pending Taylor Grazing Act of 1934, stated that the purpose of PWR 107 was to "retain the title to and supervision of such springs and water holes." These springs and waterholes, which are located on public lands, should be regulated, supervised and administered by the Department of Interior. To hold otherwise would be in contravention of the policy of this state "to secure the maximum use and benefit, and least wasteful use, of its water resources." *Poole v. Olaveson*, 82 Idaho 496, 502, 356 P.2d 61, 65 (1960).

The purpose of PWR 107 was to prevent the monopolization by private individuals of springs and waterholes on public lands needed for stockwatering. Without the reserved water right for such springs and waterholes the purpose of PWR 107 would be entirely defeated because Taylor Grazing permittees would not have water needed for stockwatering purposes. Furthermore, the administration of the reserved water rights for consumption by grazing animals on land managed by the federal government may simplify the SRBA proceeding because the priority date for all of the Taylor Grazing rights would be the same date, April 17, 1926, which is the date of withdrawal pursuant to PWR 107.

### D. The Effect of FLPMA.

The United States argues also that the SRBA district court incorrectly concluded that the purpose of PWR 107 was abrogated by the passage of FLPMA in 1976. The United States contends that, instead, this Court should follow the decision of the Colorado court in *United States v. City and County of Denver, supra,* holding that the enactment of FLPMA had no effect on the reserved water rights created by PWR 107. 656 P.2d at 31, n. 47. We agree.

In 1976, with the enactment of FLPMA, Congress limited the authority for future withdrawals of land from the public domain by the Executive Branch. However, FLPMA provided a savings provision that stipulates: "All withdrawals, reservations, classifications, designations in effect as of the date of approval of this Act shall remain in full force and effect until modified under the provisions of this Act or other applicable law." 43 U.S.C. historical note § 1701.

In short, the FLPMA itself stipulated that withdrawals and reservations existing at the time of its enactment shall remain in effect. Therefore, PWR 107 reserving water rights in withdrawn land fifty years prior to the enactment of FLPMA, remains in full force and effect.

### III.

### CONCLUSION

We hold that PWR 107 is a valid basis for a federal reserved water right for the limited purpose of stockwatering. In addition, we conclude that the United States has the right to administer such water rights on the public lands managed under the Taylor Grazing Act. Furthermore, we conclude that the passage of FLPMA does not affect the PWR 107 withdrawals. Accordingly, the district court's order on Basin–Wide Issue No. 9 is reversed.

No costs are awarded on appeal.

TROUT, C.J., and JOHNSON, SILAK and SCHROEDER, JJ., concur.