# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37348

| | | |
|---|---|---|
| IN THE MATTER OF LICENSED WATER RIGHT NO. 03-7018 IN THE NAME OF IDAHO POWER COMPANY. | ) ) ) | |
| ------------------------------------------------------------ | ) | |
| IDAHO POWER COMPANY, | ) | Boise, April 2011 Term |
| | ) | |
|    Petitioner-Respondent, | ) | 2011 Opinion No. 63 |
| | ) | |
| v. | ) | Filed: May 26, 2011 |
| | ) | |
| IDAHO DEPARTMENT OF WATER RESOURCES, | ) ) | Stephen W. Kenyon, Clerk |
| | ) | |
|    Respondent-Appellant. | ) | |
| _____ | ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Washington County. The Honorable Susan E. Wiebe, District Judge.

The decision of the district court is <u>reversed</u>.

Honorable Lawrence G. Wasden, Attorney General, Boise, for appellant. Garrick L. Baxter argued.

Barker Rosholt & Simpson, LLP, and James C. Tucker, Boise, for respondent. Shelley M. Davis argued.

_____

J. JONES, Justice.

The Idaho Department of Water Resources (Department) appeals an order of the district court requiring the Department to strike a term condition from a hydropower water right license issued to Idaho Power Company. We reverse.

## I.
## Factual and Procedural Background

On December 24, 1975, Idaho Power Company filed an application with the Department for a permit to divert and use 5000 cfs of water for hydropower generation purposes at its

1

Brownlee Dam facility.[1] The Department approved the application on January 29, 1976, and issued permit no. 03-7018. The permit required Idaho Power to submit proof that the project had been completed and the water had been applied to beneficial use by February 1, 1980. The permit also contained a subordination condition stating that, "[t]he rights for the use of the waters under this permit shall be subordinate to and not prevent or interfere with any future upstream diversion and use of the waters of the Snake River and its tributaries for the irrigation of lands or other consumptive beneficial uses in the Snake River watershed." The permit did not include a condition limiting the water right to a term of years.

Idaho Power subsequently applied for, and was granted, an extension of time to provide proof of beneficial use.[2] On August 7, 1980, Idaho Power submitted proof that the project was complete and the water had been applied to beneficial use. The Department acknowledged it had received Idaho Power's submission of proof of beneficial use by responding with a letter indicating that the Department was required to conduct a field examination prior to issuing a license.

During the time that Idaho Power was applying for, and attempting to obtain, this water right at Brownlee Dam, both Idaho Power and the Department were involved in a controversy surrounding water rights in the Snake River Basin. *See Idaho Power Co. v. State,* 104 Idaho 575, 580–83, 661 P.2d 741, 746–49 (1983). In part, this controversy was the result of two decades of increased groundwater pumping by other water users upstream of the Swan Falls Dam, which decreased the water flow at the dam. *Clear Springs Foods, Inc. v. Spackman*, No. 37308-2010, 2011 WL 907115, at *2 (Idaho Mar. 17, 2011). As a result, Idaho Power filed a lawsuit against the State and various water users, seeking a determination of the validity of its water rights at the Swam Falls Dam and seeking a ruling that its water rights were not subject to future upstream depletion. *Id.* One of the other issues in the case brought by Idaho Power involved a subordination clause in the federal license that Idaho Power had obtained for its Hells Canyon Project. *Id.* The district court held that the subordination clause in the federal license applied to all of Idaho Power's water rights used for hydropower purposes at all of its facilities on the Snake River watershed, including its facilities at Swan Falls. *Id.* On appeal, this Court reversed the district court's holding in that regard, and remanded the case for further proceedings. *Id.* Idaho Power

---

[1] Idaho Power already had three hydropower water rights to operate four power generating units at Brownlee Dam but needed an additional water right to operate a fifth generating unit.

[2] Pursuant to the extension, Idaho Power was required to put the water to beneficial use by February 1, 1985.

responded by filing a second lawsuit against the State of Idaho and approximately 7500 people who claimed water rights in the Snake River Basin. *In re Snake River Basin Water System*, 115 Idaho 1, 3, 764 P.2d 78, 80 (1988).

In 1984, an agreement was entered into between Idaho Power, the State of Idaho, the governor, and the attorney general, in an effort to resolve the controversy associated with the company's water rights at the Swan Falls Dam (the Swan Falls Agreement). *Id.* As a part of the Swan Falls Agreement, the parties agreed to support legislation for the commencement of an adjudication of water rights in the Snake River Basin. *Id.* One key piece of legislation that was drafted and passed pursuant to the Swan Falls Agreement was I.C. § 42-203B, which went into effect on July 1, 1985. 1985 Idaho Sess. Laws ch. 17, § 2, pp. 25–26. Idaho Code § 42-203B gave the Department the specific authority to subordinate hydropower water rights in a permit or license to the water rights of subsequent upstream depletionary users, and also authorized the Department to limit a permit or license involving hydropower rights to a term of years. According to I.C. § 42-203B(6),

> The director shall have the authority to subordinate the rights granted in a permit or license for power purposes to subsequent upstream beneficial depletionary uses. A subordinated water right for power use does not give rise to any claim against, or right to interfere with, the holder of subsequent upstream rights established pursuant to state law. *The director shall also have the authority to limit a permit or license for power purposes to a specific term.*
>
> Subsection (6) of this section shall not apply to licenses which have already been issued as of the effective date [July 1, 1985] of this act.

I.C. § 42-203B(6) (emphasis added).

I.C. § 42-203B(7) goes on to state,

> The director in the exercise of the authority to *limit a permit or license* for power purposes to a specific term of years shall designate the number of years through which the term of the license shall extend and for purposes of determining such date shall consider among other factors:
>
> > (a) The term of any power purchase contract which is, or reasonably may become, applicable to, such permit or license;
> >
> > (b) The policy of the Idaho public utilities commission (IPUC) regarding the term of power purchase contracts as administered by the IPUC under and pursuant to the authority of the public utility regulatory policy act of 1978 (PURPA);
> >
> > (c) The term of any federal energy regulatory commission (FERC) license granted, or which reasonably may be granted, with respect to any

3

particular permit or license for power purpose;

    (d)  Existing downstream water uses established pursuant to state law.

> The term of years shall be determined at the time of issuance of the permit, or as soon thereafter as practicable if adequate information is not then available. The term of years shall commence upon application of water to beneficial use. The term of years, once established, shall not thereafter be modified except in accordance with due process of law.

I.C. § 42-203B(7) (emphasis added).

After the enactment of I.C. § 42-203B, the Department conducted a beneficial use examination with respect to the permit. On September 8, 1985, the Department submitted a beneficial use field report confirming that the project had been completed and recommending licensure. On November 16, 2007, the Department issued a preliminary order approving a license for water right no. 03-7018. The license contained the following term condition:

> The diversion and use of water for hydropower purposes under this license is subject to review by the Director after the date of expiration of the Federal Energy Regulatory Commission license for Brownlee Dam.[3] Upon appropriate findings relative to the interest of the public, the Director may cancel all or any part of the use authorized herein and may revise, delete or add conditions under which the right may be exercised.

This term condition was not included in the original permit.

Idaho Power subsequently filed a protest and petition for hearing, objecting to the inclusion of the term condition in the license. Idaho Power argued that because the condition was not included in the water right permit, the term condition was unlawful. Thereafter, the Department provided Idaho Power with a position statement, indicating that,

> [e]ffective July 1, 1985, Idaho Code §§ 42-203B (6) and (7) authorize the Department to limit a permit or license for power purposes to a specific term. Consistent with I.C. §§ 42-203B (6) and (7), it is the Department's standard practice to put term review conditions on all permits and licenses for the use of water to generate power.[4]

---

[3] The record indicates that Idaho Power's federal power license for the Hells Canyon Project, which includes Brownlee Dam, expired in 2005. However, it appears the Department, before issuing the water license in 2007, checked with the Federal Energy Regulatory Commission and learned that the federal license "will not change upon renewal."

[4] The position statement included an Administrator's Memorandum, dated June 19, 1986, indicating how regional offices should handle approval of permits for hydropower purposes. The memorandum indicates that when dealing with a hydropower application coming within FERC jurisdiction, departmental staff need to be aware of FERC licensing conditions for the facility in question. An attachment to the memorandum shows standard conditions of approval for a state water rights permit and the language of one of such conditions is that which was incorporated into the license at issue in this case. The memorandum notes that an applicant "can request Department action on an application for permit" prior to receiving FERC approval.

4

Idaho Power later withdrew its protest and petition for hearing, and the Department issued an order designating license no. 03-7018 a final order. In its order, the Department articulated the legal basis for including the term condition in the license. Specifically, the Department determined that the plain language of I.C. § 42-203B gives the Department the authority to insert a term condition in a permit *or* a license. The Department also concluded that Idaho Power did not have a vested water right prior to obtaining the license because a permit is merely an inchoate right that only ripens into a vested right upon obtaining a license and, therefore, including a term condition in the license did not interfere with a vested right.

Idaho Power sought judicial review of the Department's final order by the district court,[5] arguing that (1) the Department did not have the statutory authority under I.C. § 42-203B to include a term condition in the license; (2) Idaho Power was stripped of its vested water rights by the Department's act of applying the statute retroactively; (3) the term condition, as written, is unconstitutional because it grants the Department broad and virtually unlimited discretion in the exercise of its duties without due process of law; and (4) the Department should be estopped from adding the term condition to the license because Idaho Power made substantial investments and changed its position in reliance on the terms of the original permit. The district court determined that the Department exceeded its statutory authority by including the term condition in the license and ordered the Department to strike the term condition and issue a license consistent with the terms of the original permit. After conducting an analysis of this Court's prior precedent in water appropriation cases, the district court concluded that,

> [g]iven [the] historical precedent, the Court cannot accept the Department's contention that Idaho Power, in this case, holds only an inchoate right or the hope of a right, and is stuck in that legal limbo for as many decades as it may take the Department to complete the largely ministerial task of issuing the license. By completing a $39,000,000 project and beneficially appropriating water under that permit for 27 years, Idaho Power clearly holds something more than the mere hope of a water right. The question is, did the legislature intend to strip away whatever rights Idaho Power held, simply because the Department could have but did not issue the final "license" prior to the 1985 enactment? This Court is constrained to conclude the legislature did not so intend.

---

[5] The petition for judicial review was filed in Washington County in Idaho's Third Judicial District on April 27, 2009. On December 9, 2009, this Court entered an Administrative Order, to become effective on July 1, 2010, establishing venue for water rights disputes in the Snake River Basin Adjudication District Court of the Fifth Judicial District. Neither party thereafter sought a change of venue to that court but it should be noted that any future dispute of this nature is appropriately venued with that court.

Reading I.C. §§ 42-203B(6) and (7) together, the district court determined that a "plain reading conveys the legislative intent that a term limit be included prior to appropriation of the water to beneficial use," and that such a limitation should be included during the permitting process. Because the court concluded that the Department exceeded its statutory authority by including the term condition in the license, it declined to address Idaho Power's constitutional arguments. The Department timely appealed to this Court.

## II.
## Issues on Appeal

I.      Whether the Department has the authority under I.C. § 42-203B to include a term condition in a license for hydropower purposes when such a condition was not included in the original permit?

II.     Whether Idaho Power had a vested water right prior to obtaining a license such that the Department lacked the authority to include a term condition in the license?

III.    Whether the Department unreasonably delayed issuing the license to Idaho Power?

IV.     Whether the Department exceeded its statutory authority by failing to designate a specific term of years after which Idaho Power's license would expire?

V.      Whether the Department violated IDAPA 37.03.08.050.03 by including a term condition in Idaho Power's license when such a condition was not included in the original permit?

VI.     Whether the Department's past practice with regard to including term conditions in permits and licenses demonstrates an understanding that it lacks the authority under I.C. § 42-203B to include a term condition in a license when such a term was not included in the original permit?

## III.
## Discussion

### A.      Standard of Review

Judicial review of a final decision by the Idaho Department of Water Resources is governed by the Idaho Administrative Procedure Act (the APA), title 67, chapter 52 of the Idaho Code. I.C. § 42-1701A(4). In an appeal from a decision of the district court acting in its appellate capacity under the APA, this Court reviews the agency record independently of the district court's decision. *Chisholm v. Idaho Dep't of Water Res.*, 142 Idaho 159, 161, 125 P.3d 515, 517 (2005). The Court reviews an appeal from an agency decision based upon the record created before the agency. I.C. § 67-5277; *Chisholm*, 142 Idaho at 162, 125 P.3d at 518. The Court does not substitute its judgment as to the weight of the evidence presented, but rather defers to the agency's findings of fact as long as they are supported by substantial and competent evidence. I.C. § 67-

6

5279(1); *Chisholm*, 142 Idaho at 162, 125 P.3d at 518. The interpretation of a statute is a question of law over which this Court exercises free review. *Idaho Conservation League, Inc. v. Idaho State Dep't of Agric.*, 143 Idaho 366, 368, 146 P.3d 632, 634 (2006).

The agency's action may be set aside if the agency's findings, conclusions, or decisions (a) violate constitutional or statutory provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3). In addition, this Court will affirm an agency action unless a substantial right of the appellant has been prejudiced. I.C. § 67-5279(4). "If the agency action is not affirmed, it shall be set aside, in whole or in part, and remanded for further proceedings as necessary." I.C. § 67-5279.

**B.      The Department did not exceed its statutory authority under I.C. § 42-203B by including a term condition in the license.**

The Department's first argument on appeal is that it did not exceed its statutory authority by including a term condition in the license because I.C. § 42-203B specifically authorizes the Department to include such a condition in either a permit or a license. Idaho Power, on the other hand, argues that the Department exceeded its statutory authority in two ways. First, Idaho Power asserts that I.C. § 42-203B only gives the Department the authority to include a term condition at the permitting stage and, therefore, the Department cannot include a term condition in a license when such condition was not included in the original permit. Secondly, Idaho Power contends that the Department exceeded its statutory authority by including the term condition in the license because Idaho Power had a vested water right at the time the water was applied to beneficial use in 1980—approximately five years before I.C. § 42-203B was enacted. Idaho Power is incorrect on both counts.

**1.      The plain language of I.C. § 42-203B gives the Department the authority to include a term condition in a license even if such a term was not included in the original permit.**

The Department argues that the plain language of I.C. § 42-203B(6) gives the Department the authority to include a term condition at the permitting stage *or* the licensing stage. The Department also asserts that, because the Legislature provided a specific grandfather provision for licenses that were issued prior to the statute's enactment but did not include a similar provision for permits, the Legislature intended to allow the Department to include a term condition in a license issued after the statute was enacted. Idaho Power responds by arguing that

7

the plain language of I.C. § 42-203B(7) requires the Department to add the term condition at the time the permit is issued, or as soon as is practicable thereafter, indicating a legislative intent that any term condition must be included prior to the issuance of a license.

When interpreting a statute, this Court's primary objective is to derive the Legislature's intent in enacting the statute. *Hayden Lake Fire Prot. Dist. v. Alcorn*, 141 Idaho 307, 312, 109 P.3d 161, 166 (2005). Therefore, statutory interpretation begins with the literal language of the statute. *Id*. If the statutory language is unambiguous, this Court need not engage in statutory construction and should apply the statute's plain meaning. *Id*. In other words, "[a]n unambiguous statute must be given its plain, usual, and ordinary meaning." *Flying Elk Inv., LLC v. Cornwall*, 149 Idaho 9, 15, 232 P.3d 330, 336 (2010).

In this case, the statute is unambiguous, and it is unnecessary for this Court to engage in statutory construction because the plain language of I.C. § 42-203B gives the Department the authority to include a term condition in either a permit or a license. As mentioned above, I.C. § 42-203B(6) provides,

> The director shall also have the authority to limit a permit *or license* for power purposes to a specific term.

I.C. § 42-203B(6) (emphasis added). The Legislature's use of the disjunctive "or" specifically gives the Department the authority to include a term condition at the licensing stage, not just at the permitting stage as Idaho Power contends. Furthermore, it is important to note that the statute specifically states, "[s]ubsection (6) . . . shall not apply to licenses which have already been issued as of the effective date [July 1, 1985] of this act." I.C. § 42-203B(6). In other words, the Legislature included a grandfather provision in the statute that prohibits the Department from adding a term condition in any license issued prior to the statute's enactment. Importantly, the Legislature did not include any provision limiting the Department's authority to insert a term condition in a license, such as Idaho Power's, that is issued after the statute was enacted.

Moreover, the plain language of I.C. § 42-203B(7) reaffirms the Department's authority to include a term condition in a license. The first sentence of subsection (7) provides,

> The director in the exercise of the authority to limit a permit *or license* for power purposes to a specific term of years shall designate the number of years through which the term of the license shall extend . . . ."

I.C. § 42-203B(7) (emphasis added). This subsection expressly indicates that the Department can exercise its authority to limit hydropower rights at either the permitting or licensing stage.

8

Consequently, because the plain language of I.C. §§ 42-203B(6) and (7) demonstrates that the Department has the authority to include a term condition in a permit *or* license, the Department did not exceed its statutory authority when it included the term condition in the license for water right no. 03-7018.

Idaho Power contends that the last paragraph of I.C. § 42-203B(7) requires the Department to include a term condition at the time the permit is issued, or at least before the water is put to beneficial use. According to the last paragraph of I.C. § 42-203B(7),

> The term of years shall be determined at the time of issuance of the permit, or as soon thereafter as practicable if adequate information is not then available. The term of years shall commence upon application of water to beneficial use. The term of years, once established, shall not thereafter be modified except in accordance with due process of law.

I.C. § 42-203B(7). Idaho Power is correct that this part of the statute demonstrates the Legislature's intent to have the term condition included in the permit, or as soon thereafter as is practicable. However, the language in the last paragraph of subsection (7) does not support Idaho Power's conclusion that the Department is prohibited from including a term condition in a license that was issued after the statute was enacted. It appears that the last paragraph of subsection (7), indicating that the term of years should be established at the time the permit is issued, is meant to address those circumstances where a permit has not yet been issued. In other words, the last paragraph of subsection (7) is forward-looking and is meant to apply to all permits issued after the effective date of the statute. Again, this is supported by the fact that the Legislature chose to include a grandfather provision for those licenses that had already been issued prior to the statute's enactment, but chose not to include a similar grandfather provision for existing permits or licenses that had not yet been issued. Therefore, it appears that the Legislature intended, by adding the words "or license" to both subsections (6) and (7), for the Department to be able to go back and include a term condition in licenses that had yet to be issued at the time the statute was enacted. Consequently, the Department had the authority, based on the plain language of I.C. § 42-203B, to include a term condition in Idaho Power's license, even though such a condition was not included in the original permit.

**2. The Department did not exceed its statutory authority by including a term condition in Idaho Power's license because Idaho Power had not yet obtained a vested water right.**

Idaho Power argues that it had a protected water right at the time in which it applied the water to beneficial use and, thus, the Department exceeded its statutory authority by including a term condition in the license. In other words, it appears that Idaho Power is arguing that it obtained a vested water right akin to a license prior to the effective date of the statute, and because the statute specifically prohibits the Department from including term conditions in licenses issued prior to the statute's enactment, the Department lacked the authority to include the term condition in Idaho Power's license. On the other hand, the Department argues that Idaho Power did not have a vested right in the water until it received the license from the Department.

The question of the precise point in time that a water right vests under the statutory method is an issue of first impression before this Court. Prior to 1971, water users could appropriate water in the state of Idaho through the constitutional method of diversion and application to a beneficial use. *See, e.g., Cantlin v. Cater*, 88 Idaho 179, 186, 397 P.2d 761, 765 (1964). Without a need to obtain a permit or license, a legal appropriation could be made "[b]y actually diverting and applying water to a beneficial use." *Id*. However, in 1971 the Legislature amended I.C. §§ 42-103 and 42-201 to require water users to comply with the statutory method of appropriating water. As set forth in I.C. § 42-103, "[t]he right to the use of the unappropriated waters of rivers, streams, lakes, springs, and of subterranean waters or other sources within this state shall hereafter be acquired only by appropriation under the application, permit *and* license procedure as provided for in this title . . . ." I.C. § 42-103. (emphasis added)

I.C. § 42-103 specifically requires an individual wishing to appropriate water to abide by the statutory procedures laid out in title 42 of the Idaho Code before obtaining a water right, and no longer allows water to be appropriated via the constitutional method. I.C. § 42-103; *Fremont-Madison Irr. Dist. & Mitigation Group v. Idaho Ground Water Appropriators, Inc.*, 129 Idaho 454, 456, 926 P.2d 1301, 1303 (1996). The first step under the statute is for the applicant to apply to the Department for a permit. I.C. § 42-202. Next, the Department publishes notice of the proposed diversion and provides interested parties the opportunity to protest the application. I.C. § 42-203A. After holding a hearing regarding any protests to the application, the Department determines whether to grant the permit based on the statutory criteria laid out in I.C. § 42-203A(5). I.C. § 42-203A(5). If the applicant is granted a permit, the applicant then has a

specified period of time to submit proof that the applicant has completed actual construction of the project and applied the water to full beneficial use. I.C. §§ 42-204 & 42-217. The Department is then required to conduct a field examination to confirm that the water user has completed construction and applied the water to beneficial use. I.C. § 42-217. If, based on the proof submitted by the applicant and the field examination, the Department "is satisfied that the law has been fully complied with and that the water is being used at the place claimed and for the purpose for which it was originally intended, the [D]epartment shall issue to such user or users a license confirming such use." I.C. § 42-219(1). On the other hand, "[i]n the event that the [D]epartment shall find that the applicant has not fully complied with the law and the conditions of permit, it may issue a license for that portion of the use which is in accordance with the permit, or may refuse issuance of a license and void the permit." I.C. § 42-219(8).

In considering at which stage in the licensing process an applicant obtains a vested right in water, this Court has held that an "applicant gains but an inchoate right upon filing of the application which may ripen into a vested interest following *proper statutory adherence*." *In re Hidden Springs Trout Ranch, Inc.*, 102 Idaho 623, 625, 636 P.2d 745, 747 (1981) (emphasis added). However, previous Idaho cases have not addressed the precise meaning behind "proper statutory adherence." The case law is clear that an applicant does not obtain a vested right at the point where an application is filed or the point where a permit is obtained. *See, e.g., id.* (holding that there is no vested interest upon initiating the statutory appropriation process by filing an application); *A & B Irrigation Dist. v. Aberdeen-American Falls Ground Water Dist.*, 141 Idaho 746, 753, 118 P.3d 78, 85 (2005) (finding that "a party is not entitled to vested rights in a water right by virtue of filing a permit application"); *Hardy v. Higginson*, 123 Idaho 485, 491, 849 P.2d 946, 952 (1993) (holding that "permits only give [the applicant] an inchoate or contingent right to put the water to a beneficial use"). However, this Court has never considered the question of whether an applicant obtains a vested right upon receiving the permit and applying the water to beneficial use.

To determine whether an applicant obtains a vested right upon receiving the permit and applying the water to beneficial use, it is necessary for this Court to determine what is meant by prior case law indicating that an inchoate right may ripen into a vested interest "following proper statutory adherence." *In re Hidden Springs Trout Ranch, Inc.*, 102 Idaho at 625, 636 P.2d at 747. There are two possible interpretations of when an applicant has properly adhered to the statute:

11

(1) when the applicant does all that is required of it under the statute, regardless of when the applicant's statutory compliance is recognized by the Department; or (2) when the procedures under the Idaho Code for obtaining a license are completed, including the issuance of a license.

We conclude that a water right does not vest until the statutory procedures for obtaining a license are completed, including the issuance of the license. The progression from the constitutional method of appropriation—which focused purely on the actions of the appropriator—to the statutory method of appropriation—which focuses on compliance with the statute—indicates that the Legislature intended that all procedures under the statute be completed before an applicant obtains a vested water right. Unlike the constitutional method where only the applicant is involved, the statutory method requires action by both the applicant and the Department. Moreover, the statutory scheme for obtaining a license specifically includes language requiring the Department to ascertain whether an applicant has complied with the law, as well as any conditions of the permit, before issuing a license. In other words, the Department's task in issuing a license is not ministerial because it requires the Department to engage in a detailed analysis prior to issuing a license. Such a determination is an integral and essential aspect of the statutory method of appropriation, and must be conducted, and a license issued, before the applicant obtains a vested water right.

This conclusion is also supported by decisions of the SRBA court. For example, in *In re SRBA Case No. 39576 (Subcase No. 36-08099)*, slip op., pp. 23–26 (SRBA Ct. Jan. 11, 2000), the SRBA court ruled that a water right vests at the time a water user receives a license from the Department. In reaching this conclusion, the SRBA judge reasoned:

> [I]t is clear that the legislature intended the issuance of the license to mark the point at which a water right becomes vested.
> . . .
> It is clear from [the] statutory scheme that it is the intent of the legislature that all of the steps—including issuance of the license—be completed before the water right vests, and until such time the right to the use of water remains an inchoate right. Because I.C. § 42-219(6) gives IDWR the responsibility to find the facts as to whether the permit conditions were complied with, it is untenable to assert that a water right may vest prior to this step in the permit and licensing process.

12

*Id.* at 24–25.[6] Therefore, a water right does not vest until all of the statutory steps have been completed, including obtaining a license. Because Idaho Power did not have a vested right in the water until the license was issued in 2007, the Department did not exceed its statutory authority by including a term condition in the license.

> **C.      Idaho Power is not entitled to issuance of a license by operation of law.**

Idaho Power argues that the Department impermissibly waited 5 years to complete its field examination and an additional 22 years to issue the license. Idaho Power asserts that it was prejudiced by the Department's delay because its rights were in a state of limbo during the 27 years before the Department issued the license, even though it had done everything it was required to do under the original permit. Idaho Power argues that because of the delay, this Court should find that its license became effective as a matter of law on August 7, 1980, when it submitted proof that the water had been applied to beneficial use and, therefore, the Department did not have the authority to include the term condition in the license. In other words, if the Department would have timely granted the license between August 7, 1980, and the time of enactment of the statute in July of 1985, the Department would not have had the authority to impose the term condition.

The Department responds by arguing that the delay in issuing the license was reasonable in light of the Swan Falls controversy and the history of litigation over hydropower water rights at the Swan Falls Dam. The Department also asserts that Idaho Power was not prejudiced by the delay because it was allowed to continue using the water to generate power for the entirety of the 27 years.

Idaho Power cites the decision of the SRBA court in *Riley v. Rowan, In re SRBA Case No. 39576* (*Subcase No. 94-00012*), Memorandum Decision (SRBA Ct. Aug. 28, 1997), for the proposition that a lengthy delay in issuing a water license entitles a permit holder to a license by operation of law. In that case, the court held that "where a license is consistent with the terms of the permit application, the permit, and IDWR's examination and where IDWR has breached its duty to timely license the water right, this court deems the license to be effective and in force as

---

[6]The judge also noted authority from other jurisdictions supporting the proposition that a water right does not vest until a license is issued. *See, e.g., Little v. Greene & Weed Inv.*, 839 P.2d 791, 794 (Utah 1992) (holding that until the State issues a certificate of appropriation, any right to use the water remains inchoate); *Green v. Wheeler*, 458 P.2d 938, 940–41 (Or. 1969) (holding that "the legislative assembly intended the water right certificate, not the permit, even when followed by a beneficial use, to mark the point at which a water right becomes vested").

of the date of proof of beneficial use was submitted." *Id.* at 10. The SRBA court's decision was appealed to this Court, but we specifically declined "to address whether the IDWR breached its statutory duty by delaying the issuance of the license." *Riley v. Rowan*, 131 Idaho 831, 834, 965 P.2d 191, 194 (1998). The SRBA court's ruling, requiring issuance of the water license by operation of law, is not binding on this Court, and Idaho Power has failed to cite any legal authority from this Court, nor does there appear to be any, indicating that a water user is entitled to a license by operation of law in the event that the Department delays issuance of the license.

Moreover, this Court is not in a position to grant the relief Idaho Power is requesting in a judicial review proceeding. Pursuant to I.C. § 67-5279, upon reviewing an administrative appeal, the Court can either affirm the agency action, or set it aside, in whole or in part, and remand for further proceedings as necessary. Therefore, even if requiring the issuance of a license by operation of law was a viable remedy for Idaho Power, this Court would not be in the position to grant such a remedy in a judicial review proceeding.

Although the delay in issuing the license certainly appears to be much longer than one would expect, Idaho Power has failed to demonstrate, either before the administrative agency or on appeal, that the Department's delay in issuing the license was unreasonable under the circumstances. On appeal, the Department contends that the delay in this case was justified in light of the Swan Falls controversy and the history of litigation over hydropower water rights at the Swan Falls Dam. The controversy between Idaho Power, the State, and other water users regarding water rights at the Swan Falls Dam was in full force at the time Idaho Power was making efforts to complete the permit and licensing procedures. Negotiation efforts to resolve that controversy finally resulted in the parties entering into the Swan Falls Agreement in 1984. After the agreement, both Idaho Power and the Department were engaged in efforts to pass legislation, including I.C. § 42-203B, pursuant to the Swan Falls Agreement. After the legislation was passed, both parties were engaged in the lengthy process of adjudicating all of the various water rights at the Snake River Basin.[7] The Department's recommendations with regard to the

---

[7] It was also after the enactment of I.C. § 42-203B that the Department issued the Administrator's Memorandum referenced in footnote 4, dealing with the processing of applications for hydropower permits. Of interest in that document is the language indicating that an applicant can request Department action on a permit application prior to issuance of a FERC license. This certainly might give an applicant some indication that the Department could also be requested to move forward on the issuance of a license, particularly if some urgency was involved. Nothing in the record indicates that Idaho Power requested action by the Department on its licensure between 1985 and 2007, or that it even inquired about the status of the licensure proceeding.

water right at issue in this case were not submitted to the SRBA court until 2006. According to the Department:

> The approach to dealing with the approximately 150,000 water rights claims filed in the SRBA has been a methodical one, with the Department recommending water rights on a basin-by-basin approach. The recommendations for the Basin 02 water rights (the basin in which this water right is located) having only been filed with the SRBA district court in December of 2006.

Consequently, the Department has put forth several colorable justifications for its delay in issuing the license. On the other hand, Idaho Power submitted no evidence indicating that the Department's delay was unreasonable. Thus, even if the Court had the ability to order the retroactive issuance of a license in a judicial review proceeding, we have no grounds to conclude that the Department impermissibly delayed issuing the license to Idaho Power.

Furthermore, Idaho Power has failed to demonstrate that it suffered any prejudice as a result of the delay. The issue of whether a substantial right of Idaho Power had been prejudiced by the Department's action, within the meaning of I.C. § 67-5279(4), was not addressed by the court below and, therefore, will not be addressed by this Court. However, Idaho Power's counsel asserted at the oral argument of this case that Idaho Power had sustained prejudice as a result of the Department's failure to timely issue the license. It was asserted that the company's investment in the fifth power generating unit at Brownlee Dam, for which this water right was intended, was based on the expectation of obtaining a long-term license and that the failure to issue the license was detrimental to such investment expectations. However, counsel admitted that, as things turned out, the company's investment-backed expectations were not frustrated because its use of the water continued through the term of Brownlee's FERC license—long enough to realize those expectations. Idaho Power continued to use the water to generate hydropower for the entire 27 years prior to when the Department issued the license. During this time, the Department took no action to interfere with Idaho Power's use of the water. Indeed, if Idaho Power believed it was being injured by the Department's delay in issuing the license, it could have sought a writ of mandamus to compel action by the Department. I.C. § 7-302 provides an avenue for a party "to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station . . . ." I.C. § 7-302. Because Idaho Power failed to make any effort to compel the Department to issue the license and because Idaho

Power has not shown how it was prejudiced as a result of the delay, Idaho Power's arguments regarding the Department's delay are of no avail.

> **D.**     **This Court declines to address Idaho Power's argument that the Department exceeded its statutory authority by failing to designate a specific term of years after which the license would expire.**

In a footnote in its brief, Idaho Power argues that the Department has the authority under I.C. § 42-203B to designate a specific term of years through which the term of a hydropower license will extend, but does not similarly have the authority to provide an indefinite timeframe in which to review or modify a license. The term condition the Department included in Idaho Power's license provides,

> The diversion and use of water for hydropower purposes under this license is subject to review by the Director after the date of expiration of the Federal Energy Regulatory Commission license for Brownlee Dam. Upon appropriate findings relative to the interest of the public, the Director may cancel all or any part of the use authorized herein and may revise, delete or add conditions under which the right may be exercised.

According to Idaho Power, the Department exceeded its statutory authority by failing to designate a specific term of years after which the license would expire,[8] and by including language that would allow the Department to continually review the license at any time.[9]

---

[8] I.C. § 42-203B(6) provides the Department director authority to "limit a permit or license for power purposes to a specific term." This would seem to require that a specific number of years be stated in the license, or perhaps to require the license to specify that the term of the water right is linked to the term of a specific FERC license for the hydropower-generating facility in question. The term in the condition included in license no. 03-7018 is difficult to determine. When asked at oral argument before this Court what the term of the license was, counsel for the Department indicated that it was for the term of the FERC license. The problem is that the FERC license expired in 2005, while the water license was issued two years later. Idaho Power's counsel stated at oral argument that the FERC license has since been renewed on a year-to-year basis while the relicensing proceeding progresses and that it is anticipated Idaho Power will received a 30 or 50 year license at the conclusion of that proceeding. Several questions present themselves. Did the license expire in 2005 when the previous FERC license expired? Does the license continue with each yearly extension of the FERC license? Does the license continue so long as Brownlee Dam is under licensure by FERC? The issue pertaining to the exact term of this license has not been properly brought before the Court on appeal and, indeed, neither party has provided information or argument regarding what the specific term of the license is. Therefore, we do not address it and, if either party wishes to do so, the matter must be determined elsewhere.

[9] In the footnote in its appellate brief, Idaho Power argues that the term condition is "unconstitutional as the language inserted is vague, indefinite, arbitrary and capricious, and reserves the [D]epartment broad unlimited discretion in the exercising of its powers and canceling of Idaho Power's license on a whim, without due process." The second sentence of the challenged condition, which purports to give the Department director the ability to revise, delete or add conditions, or to cancel all or any part of the use upon expiration of the FERC license for Brownlee Dam, does not appear to be authorized by anything contained within I.C. § 42-203B. The Department argues that this part of the term condition is required by the public interest and, in addition, is beneficial to Idaho Power in that it will not have to seek relicensing for its hydropower right upon expiration of the license term, will not have to pay additional fees for a new application, and so on. Despite its altruistic intentions, the Department has

16

We decline to address these issues because they were not properly raised, nor did either party adequately address them, on appeal. Idaho Power devotes only a footnote in its appellate brief to a discussion of these issues, and neither issue is adequately supported by legal authority or argument as required by I.A.R. 35(b)(6). Idaho Appellate Rule 35 requires parties to an appeal to adequately address each issue raised with argument, legal authority, and citation to the record. Therefore, we decline to consider any objection to the language of the term condition.

**E.     This Court declines to consider Idaho Power's argument that the Department violated IDAPA 37.03.08.050.03 by including a term condition in the license because the issue is raised for the first time on appeal.**

In addition to arguing that the Department exceeded its statutory authority and violated the provisions of I.C. § 42-203B, Idaho Power also asserts that the Department violated its own water right appropriation rule, IDAPA 37.03.08.050.03, by including the term condition in the license when the same term was not included in the original permit.

We decline to address this issue because Idaho Power did not raise it below and, therefore, the district court did not have the opportunity to rule on it. "It is well established that in order for an issue to be raised on appeal, the record must reveal an adverse ruling which forms the basis for an assignment of error." *Krempasky v. Nez Perce County Planning and Zoning*, 150 Idaho 231, 236, 245 P.3d 983, 988 (2010). "Issues not raised below but raised for the first time on appeal will not be considered or reviewed." *Id.* Because Idaho Power's argument regarding the Department's alleged violation of IDAPA 37.03.08.050.03 was not raised before the district court, it will not be addressed on appeal.

**F.     This Court declines to conduct a historical review of the other hydropower permits and licenses issued by the Department because such documents are not in the record and are not relevant to this appeal.**

In its briefing, Idaho Power discusses four hydropower licenses containing a term condition that the Department issued prior to issuing license no. 03-7018 in this case. Idaho Power attached all four permits and corresponding licenses to its brief as addenda. According to

_____

not set out the statutory authority for inclusion of this rather wide-ranging provision. On the other hand, Idaho Power has failed to adequately articulate precisely how the provision violates its due process rights and has failed to support its argument with relevant legal authority. The only legal authority Idaho Power cites to support its argument is *State v. Korsen*, 138 Idaho 706, 712, 69 P.3d 126, 132 (2003). Curiously, Idaho Power cites *Korsen* for the proposition that "[t]o prove a statute is unconstitutional "as applied," the party must only show that, as applied to the defendant's conduct, the statute is unconstitutional," even though it does not appear Idaho Power is challenging the constitutionality of the statute in this case. Since neither party has submitted adequate record or authority to consider issues relating to the second sentence of the term condition, we decline to address them here.

17

Idaho Power, in each of these licenses the term condition was included in the original permit, or was added to the permit prior to licensing. Idaho Power argues that the Department's past practice with regard to including term conditions demonstrates its understanding that it lacks the authority under I.C. § 42-203B to include a term condition in a license when such term was not included in the original permit.

We decline to address Idaho Power's argument because the past permits and licenses Idaho Power relies on to support its argument are not a part of the record on appeal. This Court reviews an appeal from an agency decision based upon the record created before the agency. I.C. § 67-5277; *Chisholm*, 142 Idaho at 162, 125 P.3d at 518. Idaho Appellate Rule 30 allows either party to file a motion requesting that the appellate record be augmented, and sets forth the relevant procedures to be followed in order to so. The licenses and permits found in Addenda 1 through 5 of Idaho Power's brief are not a part of the agency record on appeal, nor has Idaho Power sought to augment the record to include such documents pursuant to I.A.R. 30.

Furthermore, the Department's decision regarding whether or not to add a term condition to a permit or license in other cases is not relevant to this appeal. Just because the Department may have decided not to exercise its authority to add a term condition in a license in another case, does *not* mean that the Department lacks the authority to implement such a term condition in this case. Therefore, we decline to review other water right permits and licenses issued by the Department as Idaho Power requests.

### IV.
### Conclusion

The Department had the statutory authority under Idaho Code § 42-403B to include a term condition in Idaho Power's license even though such a condition was not included in its permit. Therefore, the district court's order requiring the Department to strike the term condition from the license is reversed.[10] Costs on appeal are awarded to the Department.

Chief Justice EISMANN and Justices BURDICK, W. JONES and HORTON CONCUR.

---

[10] It is worth noting that the district court did not have the authority to issue an order requiring the Department to strike the term condition from the license and to reissue the license pursuant to the terms of the permit and consistent with the district court's opinion. Pursuant to I.C. § 67-5279, "[i]f the agency action is not affirmed, it shall be set aside, in whole or in part, and remanded for further proceedings as necessary." In other words, the district court had the authority to set aside the Department's decision to include the term condition in the license, but lacked the authority to order the Department to strike the condition and reissue the license.